Marshaix,
 
 Ch. J.
 

 delivered the'opinion of the as follows:
 

 The island of Santa Cruz, belonging to the kingdom of Denmark, was subdued, during the late war, by the arms of his Britannic majesty. Adrian Benjamin Bentzon, an officer of the Danish government, and a proprietor of land therein, withdrew from the island on its surrender, and has since resid'd in Denmark. . The property of the inhabitants being secured to them, lie still retained his estate in the island under the management of'an agent, who shipped thirty hogsheads of sugar, the produce of that estate, on board a British .ship, to a commercial house in London, on account and risk of the said A. B. Bentzon. On her passage, she was captured by the American privateer, the Comet, and brought into Baltimore, where the vessel and cargo were libelled as enemy property. A claim for these sugars was put in by Bentzon 5 bu,t they were condemned with the rest of the cargo
 
 ;
 
 and the sentence was affirmed in the Circuit Court. The Claimant then appealed to this Court.
 

 Some doubt has been suggested whether Santa Cruz, while in the possession of .Great Britain, could properly be considered as a British island. But for this doubt there, can be no foundation. Although acquisitions inade during.war are not considered as permanent until confirmed by treaty, yet to every -commercial and belligerent purpose, they are considered as a part of the-domain of the conqueror, so long as he retains the possession and government of them. The island of Santa Cruz, after its capitulation, remained a British island until it tos restored to Denmark.
 

 Must the produce of a plantation in that island, ship-, ped by‘the proprietor himself, who is a Dane residing in Denmark, bo .considered as British, and therefore enemy j>foperty ?
 

 
 *196
 
 In arguing this question, the counsel for the Clair mants has made two points.
 

 1. That this case does not come within the rule applicable to shipments from art enemy country, even as laid down in the British Courts of admiralty.
 

 2. That the rule has not oeen rightly laid" down in those Courts, and consequently will n‘ot be adopted in this»
 

 1. Does the rule laid down in the British Courts of admiralty embrace this case ?
 

 It appears to the Court that the case of the Phoenix is precisely in point. In that case a vessel was captured in a voyage from Surinam to Holland, and a part of the cargo was claimed by persons residing in Germany, then a neutral country, as the produce of their estates in Surinam.
 

 The counsel for the captors considered the law of the case as entirely settled. The counsel for the Claimants did not controvert this position. They admitted,
 
 it;
 
 but endeavored to extricate their case from the general principle by giving it the protection of the treaty of Amiens. In pronouncing his opinion, sir William Scott lays down the general rule thus: «« Certainly «« nothing can be more decided and fixed, as the principle of this Court and of the Supreme Court, upon « very solemn arguments, than that the possession of ««the soil does'impress upon the owner the character of ««the country, as far as the produce of that plantation *« is concerned, in its transportation to any other coun- «< try, whatever the local residence of the owner may «< be.. This has been so repeatedly decided, both in this ««and the superior Court, that it is no longer open to ««discussion. No. question can be made ou the point of ««law, at this day.”
 

 Afterwards, in the case of the
 
 17r«w Anm, Catharina,
 
 sir William Scott lays down the rule, and states its reason. ««It cannot be doubted,” he says,««that there are transactions so radically and fundamentally national as to,impress' the national character, independent of peace or war; and the local residence of the parties. The
 
 *197
 
 produce of a person’s own plantation in tne colony of the enemy, though shipped in time of peace, is liable to he considered as the property of the enemy, by reason that the proprietor has incorporated hiinse’" with the permanent interests of the nation'as a holder of the soil, and is to be taken as a part of that-country, in that ticular transaction, independent of his own personalicesidence and occupation.”
 

 This rule laid down with so much precision, does not, it is contended, embrace Mr. Bentzon’s claim,- because he has not incorporated himself with the permanent interests of the nation.” He acquired the property while Santa Cruz was a Danish coiony, and hé withdrew from the island when it became British.
 

 This distinction, does not appear to the Court tobe a sound one. - The identification of the national character of the owner with that of the soil, in the particular transaction, is not placed on the dispositions with which he acquires the soil, or on his general character. The acqmsition of land in Santa. Cruz binds him, so far as respects that land, to the fate of Santa Cruz, whatever its destiny may be. While that island belonged to Denmark, the produce, of the soil, while unsold, was, according to this rulé, Danish property, whatever might be the general character of the particular proprietor. When the island became British, the soil and its produce, whileTbat produce remained unsold, were British.
 

 The general commercial or political character of Mr. Bentzou could not, according to this rule, affect this particular transaction. Although incorporated, so far as respects his general character, with the permanent interests of Denmark, he was incorporated, so far as respected his plantation in Santa Cruz, with the permanent interests of Santa Cruz, which was, at that time, British; and though as a Dane, he was at war with Great Britain, and an enemy, yet, as a proprietor of land in Santa Cruz, lie was no enemy : he . could sliip his produce to Great Britain, in perfect safety.
 

 The case is certainly within the rule as laid down in the British Courts. The next enquiry is: how far will that rule be adopted in this country ?
 

 
 *198
 
 The 1 aw. of nations is the great source from which we de- . rive tho¡?e mies, respectingbelligereut and neutral rignts, which are recognized by alt civilized and commercial states throughout Europe and America. This law is in part .unwritten, and in part conventional. . To ascertain that which is unwritten, we resort to the great principies of reason and justice: but., as these, principles will ■ be differently understood by, different nations'under different circumstances, we consider them as being, in some .degree, fixed-and rendered stable by a scries of judicial decisions.. The. decisions of the Courts of - every country, so far as they are founded upon a law* common to every country, will be received, not as authority, but with respect. The decisions of the... -Courts of - every country show bow the law of nations, in the given case, is understood in that country, and will be considered in adopting the rule which is to prevail in this.
 

 Without taking a comparative view of the justice pr. fairness of the rules established in the British Courts, and of those.established in .the Courts of other nations, there are circumstances not to be excluded from consideration, which give to those rules a claim to our attention that wo 'cannot entirely disregard. The United States having, at one time, -formed a component part of the British empire,
 
 their
 
 prize law was our prize law. When we separated, it continued to be our prize law,, so far as it was adapted to our circumstances and was not varied by the power which was capable of changing it.
 

 It will not be advanced, in consequence of this former relation between the two countries, that any obvious misconstruction of public law made by the - British Courts, will be considered as forming a rule for the American Courts, or that, any recent rule of the British Courts'is entitled to more respect tlupi the recent r iles of other countries. But a case professing to be decided on ancient, principles will not be entirely disregarded, unless it be very unreasonable, or be founded on a construction rejected by other nations.
 

 The rule laid down in the Phoenix is said to be a recent rule, .because a case solemnly decided before the lords commissioners -in lT^, is quoted in the margin
 
 *199
 
 as its authority. But that case is not suggested to have been determined contrary to former, practice or former' opinions. JNor do \we perceive any reason for -supposing it to be contrary to the rule of other nations in a similar case.
 

 The opinion that ownership of,the soil does, in some degree, connect the owner with the property, so far as respects that, soil, is an opinion which certainly,pre-vails very extensively. It. is not an unreasonable opinion. Personal property may follow* the person any. where; and its character, if, found on the ocean, may depend on the domicil of the owner. But land is fixed. Wherever the owner may reside, that land is hostile or friendly according to the. condition of the country in which it is placed. It is no extravagant perversion of principle,'nor .is it a violent offence to the course of human #opinion to say that the proprietor, so far as respects his interest in this land, partakes of its character; and that the produce, while the owner remains unchanged, is subject to the same disabilities. In condemning the sugars of Mr. Ilcntzon as enemy property, this Courtis of opinion that there was no error, and'the. sentence is affirmed with costs.