BaRNEx, J.,
delivered the opinion of the court:
The claimant is a corporation organized and existing under the laws of "Pennsylvania, having its principal office and place of doing business in the city of Philadelphia. This corporation is now, and for several years has been, engaged in the business of mining and selling iron ore and its products, and in manufacturing iron and steel products, and was engaged in that business during the Spanish war. In furtherance of the business, it owned, leased, and-operated mines in the island of Cuba, and maintained offices and manufacturing works in Cuba during such war; and also owned, in connection with such works, 66 buildings, which had been used as dwelling houses for the use and occupation of its employees, and as storehouses, offices, etc., in connection with the business of the claimant.
While the Spanish war was in progress, and on or about July 11, 1898, General Miles, then in command of the United States forces in Cuba, by the advice of the medical staff, ordered the destruction by fire of the 66 houses mentioned, to prevent the spread of the yellow fever then prevalent in that vicinity, by the destruction of the fever germs which were believed to be lurking therein. At the time of the destruction of these houses, troops of the United States were stationed near them, and they were burned for the purpose of preserving the health and lives of these troops. In connection with these houses, some furniture and tools belonging to the claimant were also incidentally destroyed by said fire. Also, about the same time, other personal property of the claimant was damaged by the necessary military operations of the United States troops.
This action is brought by the claimant to recover from the defendants a judgment for damages growing out of this destruction.
The first question to be considered in the determination of this case is the status of the property destroyed — i. e., whether it is to be treated as “ enemy property ” or the property of a citizen of the United States. The law seems to be well settled that when a citizen of one belligerent country is doing business in the other belligerent country and *112 has built up and purchased property there which has a permanent situs, such property is subject to the same treatment as property of the enemy. At first sight this rule of law seems to be a harsh one, but when we .consider that the property therein situated is a part of the assets of a country, and in a certain sense a part of the country itself, and further consider the difficulty, in stress of war, of discriminating between enemy and citizen property situated in the same country, the rule seems to be reasonable and necessary.
“A foreigner living and established within the territory of a State is, to a large extent, under its control; he can not be made to serve it personally in war, but he contributes by way of payment of ordinary taxes to its support, and his property is liable, like that of subjects, to such extraordinary subsidies as the prosecution of a war may demand. His property being thus an element of strength to the State, it may reasonably be treated as hostile by an enemy.” (Hall’s International Law, 5th. eel., 491.)
“ Property is considered to- be necessarily hostile by its origin when it consists in the produce of estates ownecl by a neutral in belligerent territory, although he may not be resident there. Land, it is held, being fixed, is necessarily associated with the permanent interests of the State to which it.belongs, and its proprietor, so far from being able to impress his own character, if- it happens to be neutral, upon it or its produce, is drawn by the intimacy of his association with property which can not be moved into identification in respect of it with its national character. The produce of such property therefore is liable to capture under all circumstances in which enemy’s property can be seized.” (Hall’s International Law, 5th eel., 504.)
The same doctrine is laid down in Halleck’s International Law, volume 1, 414-415, and in Taylor’s International Law, 553, and has been recognized by the Supreme Court (Thirty Hogsheads of Sugar v. Boyle, 9 Cranch, 191).
Assuming the property in question to be treated as “ enemy property,” we see no ground for the contention that the Government is liable for its destruction under the circumstances as stated; for, while the severities of war are being much ameliorated by recent treaties and international conferences, war, within certain limits, is and always will be destructive of the lives and property of the enemy.
*113 Some of the circumstances under which the property of-the enemy may be destroyed are stated by the same authority as follows:
“ Finally, all devastation is permissible when really necessary for the preservation of the force committing it from destruction or surrender; it would even be impossible to deny to an invader the right to cut the -dikes of Holland to save himself from such a fate.” (Hall’s International Law, 5th ed., 535; see also Taylor’s Interational Law, 482-483.)
In the exigencies of war, the military forces of the United States were placed in a position where the lives of the soldiers were endangered by the prevalence of yellow fever, and the germs of this disease were believed to be lurking in the buildings belonging to the claimant, near which these soldiers were necessarily encamped. The danger to health and life was imminent and seemed to call for heroic measures. It would not be contended that a belligerent would not have the right, under the most humane usages of modern warfare, to destroy the property of the enemy for the purpose of protecting its army from artillery or musket fire; and we can see ' no reason why it should not have the same right, if necessary for the protection of its army against the ravages of disease.
About the time of the destruction of these buildings other property belonging to the claimant was damaged as a neces- * sary incident to the military operations of our troops. As to the want of liability of the defendants for such damage, it is hardly necessary to cite authorities, but reference is made to the above text-books at the pages as noted.
We have thus far considered this case upon the assumption that the property destroyed was “ enemy property,” but we believe that even if it is to be considered as the property of an American citizen, no cause of action is proven against the defendant.
That a belligerent is not liable for the necessary destruction of private property of a citizen caused by necessary military operations, is also so well settled as hardly to need reference to authorities. This question arose in the case of Pacific Railroad v. United States (120 U. S., 227), and in deciding that case the court said :
*114 “ The principle that, for injuries to or destruction of property in necessary military operations during the civil war, the Government is not responsible is thus considered established. Compensation has been made in several cases, it is true, but it has generally been, as stated by the President in his veto message, ‘ a matter of bountv rather than of strict legal right.’ ”
Hence, whether considering the property destroyed as “ enemy property,” or otherwise, we do not believe the claimant is entitled to recover, and the petition is dismissed.