Per Curiam :
The facts in this case are practically the same as those in the case of Cosme Blanco Herrera et al. v. The United States (ante, p. 430), decided contemporaneously with this; and the decision in that case controls this unless the use of the wharves and the citizenship of one of the claimants herein — a British subject — operates to vary the rules announced therein.
The wharves, as well as the steamship Thomas Brooks, were seized and used by the military forces of the United States as an act of war within the limits of military operations, and, therefore, under the ruling in the case of Hijo v. The United States (194 U. S., 315), as applied to captures in Cuba by the ruling in the case of Cosme Blanco Herrera, supra, no action will lie therefor against the United States.
*449 Two of the claimants herein were subjects of Spain, while one, Robert Scott Douglas, was a British subject. But a foreigner residing in a state at war with another state is subject to the jurisdiction and control of the state wherein he resides and does business, and his property being an element of strength to the state wherein he resides “ may reasonably be treated as hostile by an enemy.” That is to say, “ enemy character may thus attach either to persons of neutral national character, and to their property as attendant on them, or to property owned by neutrals in virtue of its origin, or of the use to which it is applied.” (Hall’s Int. Law, 5th ed., p. 497.)
Such also was the view of this court in the case of The Juragua Iron Co. v. The United States (42 C. Cls. R., 99, 111), where the court said: “ The law seems to be well settled that when a citizen of one belligerent country is doing business in the other belligerent country, and has built up and purchased property there which has a permanent situs, such property is subject to the same treatment as property of the enemy. At first sight this rule of law seems to be a harsh one, but when we consider that the property therein situated is a part of the assets of a country, and in a certain sense a part of the country itself, and further consider the difficulty, in stress of war, of discriminating between enemy and citizen property situated in the same country, the rule seems to be reasonable and necessary.”
In the present case the findings show that the vessel prior to its seizure by the United States military forces had been employed in the transportation of Spanish troops and munitions of war from place to place.
Had the vessel been owned exclusively by said Douglas— the British subject — its use in transporting troops and munitions of war for the Spanish Government, however innocent the owner’s intention, would have been service to a state engaged in active hostilities against the United States. But for the purposes of this case we deem it unnecessary to hold that he had thereby forfeited his neutral character; and so, treating him as a neutral individual residing in Cuba, the obligation was upon him to “be prepared for the risks *450 of war; ” and that being so, be “ can not demand compensation for loss or damage to property resulting from military operations carried on in a legitimate manner.” (Hall’s Int. Law, sec. 269.)
In this respect he stands in no better position than a subject of Spain.
The petition is dismissed.