Ex parte LA MANTIA.

(District Court, S. D. New York. June 10, 1913.)

No. 60.

1. EXTRADITION (§ 14*)—PROCEEDINGS FOR EXTRADITION TO FOREIGN COUNTRY —EVIDENCE.

For the purposes of extradition under the treaty with Italy of March 23, 1868 (15 Stat. 629), a conviction of the alleged fugitive in contumaciam, in his absence, is to be treated only as a charge of crime.

[Ed. Note.—For other cases, see Extradition, Cent. Dig. §§ 15, 16; Dec. Dig. § 14.*]

2. EXTRADITION (§ 14*)—PROCEEDINGS FOR EXTRADITION TO FOREIGN COUNTRY —EVIDENCE.

Under Act Aug. 3, 1882, c. 378, § 5, 22 Stat. 216 (U. S. Comp. St. 1901, p. 3595), which makes documents authenticated as required by law evidence in extradition proceedings, depositions need not be sworn to.

[Ed. Note.—For other cases, see Extradition, Cent. Dig. §§ 15, 16; Dec. Dig. § 14.*]

3. CRIMINAL LAW (§ 662*)—INDICTMENT AND INFORMATION (§ 2*)—FOREIGN EXTRADITION—APPLICABILITY OF CONSTITUTIONAL PROVISIONS.

The provisions of the fifth and sixth constitutional amendments, that no person shall be held to answer for a capital or otherwise infamous crime unless on the presentment or indictment of a grand jury, and that the accused in criminal prosecutions must be confronted with the witnesses against him, have no application in proceedings for extradition to foreign countries, whose laws may be different.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3, 1538–1548; Dec. Dig. § 662;* Indictment and Information, Cent. Dig. §§ 4–8; Dec. Dig. § 2.*]

4. EXTRADITION (§ 14*)—FOREIGN EXTRADITION—PROOF OF IDENTITY.

Evidence produced in extradition proceedings for the return of an alleged fugitive from justice to a foreign country considered, and the competent evidence held insufficient to identify the prisoner as the person charged.

[Ed. Note.—For other cases, see Extradition, Cent. Dig. §§ 15, 16; Dec. Dig. § 14.*]

Application of Giovanni La Mantia for writ of habeas corpus. Prisoner discharged.

Daly, Hoyt & Mason, of New York City, for Italian government. William Michael Byrne, of New York City, for alien.

Kenneth M. Spence, Asst. Dist. Atty., of New York City, for the United States.

WARD, Circuit Judge. The Italian ambassador asked for the extradition under the treaty of 1868 between the United States and Italy of one Giovanni Di Lorenzo, charged with having committed an extraditable offense, viz., murder, October 30, 1908, at San Lorenzo, Italy. He presented to the commissioner documents certified by the American ambassador at Rome under section 5 of the act of 1882, which show clearly that the murder specified was committed; that Giovanni Di Lorenzo was charged with committing it after a preliminary judicial inquiry in substance like the indictment of a

grand jury, which resulted in the issuance of a warrant for his arrest and detention for trial on the charge, in the court of assize at Palermo.

The certificate of the American ambassador is not in the language of the statute, as would seem to be the proper course. It states that the documents are authenticated "so as to entitle them to be received in evidence for similar purposes by the tribunals of the courts of the United States of America, as required by the act of Congress of August 3, 1882." It should have stated that the documents were entitled to be so received by the courts of the kingdom of Italy. No objection, however, was made on this ground, and I mention it only to call attention to the importance of obtaining proper certificates in these cases. The expression "for similar purposes" means as evidence of criminality. In re Luis Oteiza y Cortes, 136 U. S. 330, 337, 10 Sup. Ct. 1031, 34 L. Ed. 464. I am of opinion that upon such evidence as these papers disclose a magistrate here would be justified in committing Giovanni Di Lorenzo if charged with having committed the offense in this country, which is the degree of proof required by article 1 of the treaty.

[1] The complaint states, and counsel for the prisoner contends, that he was tried and convicted in contumaciam. There is no evidence of conviction in the documents certified from Italy. What they show is that September 3, 1910, the criminal court of Palermo held a preliminary inquiry into the charge, which resulted in a finding, called sentence, that Giovanni Di Lorenzo should be tried for it in the court of assize of Palermo, and a warrant of arrest issued on September 10th in pursuance of that sentence. It would, however, make no difference whether there had been subsequently a conviction in contumaciam, because for the purposes of this proceeding it would be treated only as a charge of crime. Ex parte Fudera (C. C.) 162 Fed. 591.

Counsel for the prisoner insists upon various constitutional privileges, which I think apply only to prisoners held for trial here. The act of 1882 defines the papers which may be received in evidence as to the commission of a crime in a foreign country, if authenticated in the manner prescribed. However, the prisoner has had in substance everything that the constitutional privileges involve. The fourth amendment to the Constitution of the United States provides that no person shall be seized except upon a warrant issued "upon probable cause supplied by oath or affirmation." The documents forwarded from Italy conform to this requirement. They establish abundant probable cause. There are statements from a number of persons to the effect that a quarrel took place between Di Lorenzo, his son Salvatore, and his brother-in-law La Fata, on the one side, and two of Di Lorenzo's creditors and their attendants, on the other, as to the possession of certain empty wine casks; that in this quarrel two of the latter faction were shot to death; that Di Lorenzo, his son, and La Fata immediately fled. Scalici, a customs guard, states that he saw Di Lorenzo fire the shot that killed one of the murdered men.

[2] Although these statements were not sworn to, each is stated to

have been read, subscribed, and confirmed by the person making it, which is an affirmation. Moreover, in these international extradition cases the statute makes documents authenticated as required by law evidence. Depositions need not be sworn to. Elias v. Ramirez, 215 U. S. 398, 30 Sup. Ct. 131, 54 L. Ed. 253; Ex parte Glaser, 176 Fed. 702, 100 C. C. A. 254.

[3] The provision of the fifth amendment, "that no person shall be held to answer for a capital or otherwise infamous crime unless on the presentment or indictment of a grand jury," applies to persons held for trial in the courts of the United States. If construed to apply to prisoners to be held in extradition proceedings to answer for such crimes in foreign countries, there could be no extradition between the United States and countries where the common law does not prevail. However, in this case there was a judicial inquiry and finding in Italy preliminary to the issuance of the warrant of arrest, substantially like the finding of our grand jury.

So the provision of the sixth amendment, requiring the accused in criminal prosecutions "to be confronted with the witnesses against him," obviously applies to criminal prosecutions tried here, and not to persons extradicted for trial under treaties with foreign countries whose laws may be entirely different.

Finally, the case of Ex parte Fudera (C. C.) 162 Fed. 591, does not apply. There was in it nothing to connect the prisoner with the crime charged but pure hearsay statements of police officers, on which no magistrate in this country could commit any one for a crime charged to have been committed here.

[4] This leaves as the only question whether there is any competent legal evidence to support the commissioner's finding that the prisoner is Giovanni Di Lorenzo, as the demanding government asserts, and not Giovanni La Mantia, as he claims. I lay out of the case the copy of the examination of the prisoner and his son Salvatore at St. Louis, January 10, 1913, by the immigration authorities, certified under section 882, Rev. Stat. U. S. (U. S. Comp. St. 1901, p. 669), because that section only makes it equal to the original, which itself would not have been competent if produced; also the examination at Ellis Island by the immigration authorities February 7, 1913, of Maria Di Lorenzo, Vito Di Lorenzo, and Providenzia La Fata, which is not certified, nor the testimony of the witnesses proved, by the interpreter and stenographer, and which, if certified and so proved, would not have been competent against the prisoner, having been taken in a nonjudicial proceeding to which he was not a party. No question of disputed identity could be established upon such evidence.

I do not consider the testimony of Hayes, an immigration official, nor of Andreacci, the interpreter, at Ellis Island, as to declarations by the son Salvatore, because they are not competent evidence against the prisoner. It is sought to justify them as relating to pedigree; but the issue is strictly not as to pedigree, but as to identity, and, as far as pedigree is concerned, I have assumed that Salvatore is the son of the prisoner. I also lay out of the case the examination of the prisoner himself before the commissioner, on the ground that, the proceeding

being a criminal one, he could not, under the sixth amendment, be made a witness against himself.

The result is that no legal proof, however much moral proof there may be, is left that the prisoner, who has been for some years known in this country as Giovanni La Mantia, is, in point of fact, Giovanni Di Lorenzo. No one may properly complain that proceedings which involve personal liberty are carefully scrutinized. They should be taken with caution and in full compliance with the requirements of law.

The prisoner is discharged, but, in order that the demanding government may have an opportunity to appeal from this decision within say 20 days from the entry of an order hereunder, only upon giving recognizance with sufficient surety in the sum of $2,000 for appearance to answer the judgment of the appellate court.