SULLIVAN ET AL. *v.* KIDD.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF KANSAS.

No. 65. Argued April 27, 1920; restored to docket for oral argument May 17, 1920; reargued December 10, 1920.—Decided January 3, 1921.

1. In the absence of a controlling treaty, the capacity of an alien to inherit land within a State of the Union depends upon the law of that State. P. 435.
2. Treaties are to be interpreted upon the same principles as written contracts between individuals, all parts being considered with a view to giving a fair operation to the whole; and they are to be executed·in the utmost good faith to effectuate the purposes of the high contracting parties. P. 439.
3. The Treaty of March 2, 1899, between Great Britain and the United States, grants the subjects of each party certain rights of inheritance respecting real property within the territories of the other, but declares (Art. IV) that its stipulations shall not be applicable to any of the colonies or foreign possessions of the British

Crown unless a notice to that effect shall have been given by Great Britain to the United States on behalf of such colony or possession, and that its provisions shall extend and apply to any territory pertaining to or occupied by the United States beyond the seas, only upon notice to that effect being given by the United States to Great Britain. *Held*, that the giving of such notice conditions the applicability of the treaty to a foreign possession, not merely in respect of the property there situate, but also in respect of the subjects and citizens there residing; so that, no notice having been given on behalf of Canada, a subject of Great Britain who was a citizen and resident of that Dominion acquired no right under the treaty to inherit land in the United States. P. 436.

4. The fact that Canada, as a self-governing dependency, in the exercise of her legislative power, has granted aliens the right to inherit, cannot affect the construction of the treaty. P. 440.

5. In the practice of this country, the "most favored nation" clause is held not to extend the rights acquired by treaties containing it because of reciprocal benefits expressly conferred in treaties with other nations in exchange for rights or privileges given to our Government. P. 441.

6. The "most favored nation" clause in the above cited treaty does not control its specific condition upon the right of citizens of a foreign possession to participate in its benefits. *Id.*

7. In construing the treaty little weight can be attached to a different construction placed by Great Britain on an earlier treaty with Japan but which was not made known to the representative who negotiated the treaty in question for this country. P. 442.

8. A construction placed upon a treaty and consistently adhered to by the Executive Department, should be given much weight by the courts. *Id.*

Reversed.


THE case is stated in the opinion.


*Mr. Geo. F. Beatty* and *Mr. B. I. Litowich,* for appellants, submitted. *Mr. C. W. Burch* and *Mr. La Rue Royce* were also on the brief.


*Mr. H. M. Langworthy,* with whom *Mr. O. H. Dean, Mr. R. B. Thomson, Mr. R. D. Williams, Mr. J. E. Madden* and *Mr. W. D. McLeod* were on the briefs, for appellee.

*The Solicitor General,* by special leave of court, submitted a brief on behalf of the United States.

MR. JUSTICE DAY delivered the opinion of the court:

This is an appeal from a decree of the United States District Court for the District of Kansas. It involves the construction of the Treaty between Great Britain and the United States of March 2, 1899, relating to the tenure and disposition of real and personal property. Compilation of Treaties in Force 1904, 375 (Malloy); 31 Stat. 1939.

The case arises from the following facts:

Peter Martin died at Osawatomie, Kansas, January 29, 1915, owning real estate situated in the County of Saline, Kansas. He left surviving him certain relatives, among others a sister Margaret Ingoldsby, a resident of the township of Sheffield, County of Lennox-Addington, Province of Ontario, Canada. After the death of Peter Martin, and on July 28, 1916, Margaret Ingoldsby died at her home in Canada, and by her last will and testament, duly probated, she named the appellee, Jane Kidd, her sole devisee and legatee. The real estate in Kansas has been sold in partition sale, and the question to be decided is whether Jane Kidd, thus holding by devise the interest of Margaret Ingoldsby, is entitled to succeed to the undivided one-seventh of the estate of Peter Martin.

Primarily the devolution of the estate, it being situated in the State of Kansas, would be determined by the laws of that State. *Blythe* v. *Hinckley,* 180 U. S. 333, and previous cases in this court cited and quoted on page 341 *et seq.* Under the constitution and laws of Kansas Margaret Ingoldsby, an alien, was incapable of inheriting, and the estate would pass to the brothers and sisters and their representatives who were native citizens. *Johnson* v. *Olson,* 92 Kansas, 819.

The right of Jane Kidd to succeed to the interest of Margaret Ingoldsby is said to arise from the fact that the latter was, although a citizen and resident of Canada, a British subject, and entitled to the succession because of the Treaty of March 2, 1899. The District Court sustained this contention. Pertinent provisions of the Treaty are:

## "ARTICLE I.

"Where, on the death of any person holding real property (or property not personal), within the territories of one of the Contracting Parties, such real property would, by the laws of the land, pass to a citizen or subject of the other, were he not disqualified by the laws of the country where such real property is situated, such citizen or subject shall be allowed a term of three years in which to sell the same, this term to be reasonably prolonged if circumstances render it necessary, and to withdraw the proceeds thereof, without restraint or interference, and exempt from any succession, probate or administrative duties or charges other than those which may be imposed in like cases upon the citizens or subjects of the country from which such proceeds may be drawn.

## "ARTICLE II.

"The citizens or subjects of each of the Contracting Parties shall have full power to dispose of their personal property within the territories of the other, by testament, donation, or otherwise; and their heirs, legatees, and donees, being citizens or subjects of the other Contracting Party, whether resident or non-resident, shall succeed to their said personal property, and may take possession thereof either by themselves or by others acting for them, and dispose of the same at their pleasure, paying such duties only as the citizens or subjects of the country where the property lies shall be liable to pay in like cases.

* * * * * * * *

"ARTICLE IV.

"The stipulations of the present Convention shall not be applicable to any of the Colonies or foreign possessions of Her Britannic Majesty unless notice to that effect shall have been given, on behalf of any such Colony or foreign possession by Her Britannic Majesty's Representative at Washington to the United States Secretary of State, within one year from the date of the exchange of the ratifications of the present Convention.

"It is understood that under the provisions of this Article, Her Majesty can in the same manner give notice of adhesion on behalf of any British Protectorate or sphere of influence, or on behalf of the Island of Cyprus, in virtue of the Convention of the 4th of June, 1878, between Great Britain and Turkey.

"The provisions of this Convention shall extend and apply to any territory or territories pertaining to or occupied and governed by the United States beyond the seas, only upon notice to that effect being given by the Representative of the United States at London, by direction of the treaty making power of the United States.

"ARTICLE V.

"In all that concerns the right of disposing of every kind of property, real or personal, citizens or subjects of each of the High Contracting Parties shall in the Dominions of the other enjoy the rights which are or may be accorded to the citizens or subjects of the most favored nation.

"ARTICLE VI.

"The present Convention shall come into effect ten days after the day upon which the ratifications are exchanged, and shall remain in force for ten years after such exchange. In case neither of the High Contracting Parties shall have given notice to the other, twelve months before

the expiration of the said period of ten years, of the inten-
tion to terminate the present Convention, it shall remain
in force until the expiration of one year from the day on
which either of the High Contracting Parties shall have
given such notice.

"The United States or Her Britannic Majesty shall
also have the right separately to terminate the present
Convention at any time on giving twelve months' notice
to that effect in regard to any British Colony, foreign pos-
session, or dependency, as specified in Article IV, which
may have acceded thereto."

The case was argued and submitted at the last term
of this court. It was ordered reinstated with notice to
the Attorneys General of the United States and of the
State of Kansas. The case has been reargued. The Solici-
tor General presented the views of the State Department
of the United States, and submitted a brief in behalf of
the Government.

There are opposing views of the treaty, one taken by
the British, and the other by the American Government,
the view of the former being that British subjects, resi-
dent of Canada, or elsewhere, are entitled to inherit
property in any State of the United States, and citizens
of the United States are entitled to inherit in Great Britain
and its possessions and colonies, provided as to the latter,
that notice has been given under Article IV of the treaty
of adhesion to the terms of the convention as to such
colonies and possessions. The American contention is
stated by the Solicitor General, and appears by a com-
munication from the Secretary of State of October 2, 1920,
sent in response to the invitation of the Solicitor General
and now on the files of the Department of Justice. The
Secretary of State sets forth that it is the view of this
Government that British subjects, citizens and residents
of Canada, do not inherit in the United States by virtue
of the stipulations of the treaty, because as to the Domin-

ion of Canada no notice of adhesion to the same has been given as is required by the stipulations of Article IV. It hence appears that the one contention is that the notice required by Article IV has a territorial effect only, and when given brings such territory into the operative force of the treaty as to the property situated therein; the other, that, as to subjects and citizens, the notice is required to bring residents and property within the operative effect of the treaty.

Applied to the concrete case, the American contention is that Margaret Ingoldsby was not entitled to inherit in Kansas by the terms of this treaty because notice of adherence for the Dominion of Canada was not given. The communication of the State Department to the Solicitor General shows that the American Government is ready, and has expressed its willingness to take up the matter of extending the treaty provisions to the Dominion of Canada, notwithstanding the fact that the stipulated time for notice has expired.

Writers of authority agree that treaties are to be interpreted upon the principles which govern the interpretation of contracts in writing between individuals, and are to be executed in the utmost good faith, with a view to making effective the purposes of the high contracting parties; that all parts of a treaty are to receive a reasonable construction with a view to giving a fair operation to the whole. Moore, International Law Digest, vol. 5, 249. At the time of the negotiation of the treaty Great Britain had numerous colonies and possessions, and the United States had recently acquired certain islands beyond the seas. Concerning these the contracting parties made the stipulations contained in Article IV, adding the right to give like notice in behalf of any British protectorate, or sphere of influence, or on behalf of the Island of Cyprus by virtue of the Convention of June 4, 1878, between Great Britain and Turkey. As to the islands beyond

the seas occupied or governed by the United States, they were to come within the terms of the treaty only upon notice to that effect by direction of the treaty-making power of the United States.

If the contention of the appellee be correct, it necessarily follows that as to British possessions, the inhabitants thereof being British subjects, had nothing to gain by giving notice which Article IV specifically required, for as to them their rights had been secured by Articles I and II of the treaty. Applying this construction to the instant case, Canadians while residents of the Dominion, and citizens of a self-regulating and self-governing community, acquired by virtue of this treaty as British subjects the right to inherit in every State of the American Union regardless of local laws; this while citizens of the United States acquired no corresponding right to inherit in the Dominion of Canada until notice be given; a matter entirely beyond the control of American authority. The American right to inherit in Canada became a matter of grace on the part of the other contracting nation when it saw fit to grant it by signifying its adhesion to the treaty. Such construction is inconsistent with the general purpose and object of such conventions to secure equality in exchange of privileges and reciprocity in rights granted and secured. *Geofroy* v. *Riggs*, 133 U. S. 258, 271.

The fact that Canada, as a self-governing dependency, in the exercise of the legislative power which is hers, has seen fit to give aliens the right to inherit, adds nothing to the argument in favor of the appellee. The Dominion of Canada has not the treaty-making power. Whatever the Dominion may see fit to do in the exercise of its own legislative authority cannot affect the right of a State of the American Union to determine for herself whether aliens shall inherit property within her borders. The construction insisted upon by the United States makes for the exchange of reciprocal rights under the provisions

of the treaty, and when the required notice is given, British subjects resident of Canada would have property rights in the United States similar to those accorded citizens of the United States in Canada.  That notice was deemed essential to the security of rights of British subjects, resident of the colonies, is shown by the practice which has followed the making of the Supplementary Convention of 1902 (Treaties in Force 1904, 377; 32 Stat., p. 1914) extending for twelve months from July 28, 1901, the time fixed in Article IV of the Treaty of March 2, 1899, for the notification of accession to that Convention by British colonies or foreign possessions.  In a note to this treaty, published in Treaties in Force 1904, *supra*, it appears that most of the British colonies and possessions have given notice of adhesion to the Treaty of 1899.

The significance of Article VI is important.  In this article provision is made for the right of the United States or the British Government to terminate separately the Convention by twelve months' notice to that effect in regard to any British colony, foreign possession or dependency, as specified in Article IV, which may have acceded to the Convention.  This article lends strong support to the argument that only colonies or possessions which accede to the Convention are to have the benefit thereof; such rights, recognized as acquired by accession, being subject to termination by the withdrawal provision of Article VI.

Nor are we impressed with the argument that Canadian citizens, being also British subjects, are entitled to inherit in Kansas by virtue of the most favored nation clause. That clause has been held in the practice of this country to be one not extending rights acquired by treaties containing it because of reciprocal benefits expressly conferred in conventions with other nations in exchange for · rights or privileges given to this Government.  This clause cannot overcome the specific provisions of Article

IV making adhesion to the treaty necessary in order to bring citizens and property of colonies and possessions within the benefits of the treaty.

We are unable to see that the construction of this treaty is aided by the argument of counsel in the supplemental brief of the appellee that Lord Salisbury for the British Government insisted upon the construction which they contend for in relation to a similar convention with Japan. We find nothing in the archives of the Department of State to show that this insistence was brought forward in the course of negotiations or in any manner came to the attention of the American Representative, Mr. Hay, who negotiated this treaty with Sir Julian Pauncefote, the British Representative.

The American Government upon a message from the President for the purpose of securing the consent of the Senate, as we learn from public documents on file in the State Department, has with the consent of the Senate extended the provisions of the Convention of 1899 to Porto Rico and has so notified the British Government. We are advised by the letter of the Secretary of State of October 2, 1920 (on file in the Department of Justice), that this Government is ready to take up with the British Government the matter of extension of the treaty provisions to Hawaii and the Dominion of Canada.

While the question of the construction of treaties is judicial in its nature, and courts when called upon to act should be careful to see that international engagements are faithfully kept and observed, the construction placed upon the treaty before us and consistently adhered to by the Executive Department of the Government, charged with the supervision of our foreign relations, should be given much weight. *Charlton* v. *Kelly*, 229 U. S. 447, 468. See also *Castro* v. *De Uriarte*, 16 Fed. Rep. 93, 98 (opinion by Judge Addison Brown).

Taking the view which we have here expressed of the

433.                              Syllabus.

real purpose of the treaty as evidenced by its terms, which is strengthened by the practices of both governments in pursuance of it, we reach the conclusion that for lack of notice of the adhesion of Canada to the terms of the treaty, the law of Kansas was not superseded in favor of British subjects resident in Canada, and it determined the right of aliens to inherit lands in that State.

*Reversed.*