**PRESIDENT OF THE UNITED STATES OF AMERICA, ex rel. CAPUTO, v. KELLY, United States Marshal, et al.**

No. 304.

Circuit Court of Appeals, Second Circuit.

May 9, 1938.

788

Lewis Landes, of New York City (Julius I. Puente, of New York City, of counsel), for relator-appellant.

Davis, Polk, Wardwell, Gardiner & Reed, of New York City (Ralph M. Carson and A. S. Edmonds, both of New York City, of counsel), for appellees.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The relator, Gennaro Caputo, was arrested on a warrant issued by a United States commissioner and held for extradition to France on the complaint of the assistant consul general of the French Republic in New York. Caputo sued out a writ of habeas corpus on grounds not now important which was dismissed by the District Court. See President of the United States v. Kelly, 19 F.Supp. 730. Its order was affirmed by this court pursuant to an opinion reported in 2 Cir., 92 F.2d 603. Caputo thereafter applied for another writ of habeas corpus contending that prosecution for the offenses for which extradition was sought was barred by the French statute of limitations. He had been charged in France with the murder at Marseilles on January 14, 1923, of one Marie Girere and of the attempt at the same time and place to cause the death of one Viola Sauveur. A judgment condemning him for the above offenses was entered in his absence on January 30, 1924, by the Court of Assizes sitting in Aix. Thus it was a judgment rendered by default or, to use the language of the French law, "par contumace," and it in terms condemned him to death.

The demand for the extradition of Caputo was made pursuant to the treaty with France, 37 Stat. 1526 et seq., and also pursuant to section 5270 of the Revised Statutes, 18 U.S.C.A. § 651, which governs proceedings in the United States for the extradition of persons who have committed crimes in foreign countries. The pertinent provisions are the following:

Extradition Convention of January 6, 1909:

"Article I.

"The Government of the United States and the Government of France mutually agree to deliver up persons who, having been charged with or convicted of any of the crimes or offences specified in the following article, committed within the jurisdiction of one of the contracting Parties, shall seek an asylum or be found within the territories of the other: Provided That this shall only be done upon such evidence of criminality as, according to the laws of the place where the fugitive or person so charged shall be found, would justify his or her apprehension and commitment for trial if the crime or offence had been there committed.

"Article II.

"Extradition shall be granted for the following crimes and offences:

"1. Murder. * * *

"Article III.

"Requisitions for the surrender of fugitives from justice shall be made by the diplomatic agents of the contracting Parties, or, in the absence of these from the country or its seat of government, they may be made by the consular officers.

"If the person whose extradition is requested shall have been convicted of a crime or offence, a duly authenticated copy of the sentence of the court in which he was convicted, or, if the fugitive is merely charged with a crime or offence, a duly authenticated copy of the warrant of arrest in the country where the crime or offence has been committed and of the depositions or other evidence upon which such warrant was issued, shall be produced.

"The extradition of fugitives under the provisions of this treaty shall be carried out in the United States and in France, respectively, in conformity with the laws regulating extradition for the time being in force in the State on which the demand for surrender is made.

* * *

"Article VIII.

"Extradition shall not be granted, in pursuance of the provisions of this conven-

tion, if the person claimed has been tried for the same act in the country to which the requisition is addressed, or if legal proceedings or the enforcement of the penalty for the act committed by the person claimed have become barred by limitation, according to the laws of the country to which the requisition is addressed."

Section 5270 of the United States Revised Statutes, 18 U.S.C.A. § 651:

"*Fugitives from the justice of a foreign country.*"

"Whenever there is a treaty or convention for extradition between the Government of the United States and any foreign government, any justice of the Supreme Court, circuit judge, district judge, or commissioner, authorized so to do by any of the courts of the United States, or judge of a court of record of general jurisdiction of any State, may, upon complaint made under oath, charging any person found within the limits of any State, District, or Territory, with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty or convention, issue his warrant for the apprehension of the person so charged, that he may be brought before such justice, judge, or commissioner, to the end that the evidence of criminality may be heard and considered. If, on such hearing, he deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention, he shall certify the same, together with a copy of all the testimony taken before him, to the Secretary of State, that a warrant may issue upon the requisition of the proper authorities of such foreign government, for the surrender of such person, according to the stipulations of the treaty or convention; and he shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made."

Prosecution for such offenses as those with which Caputo is charged is not barred by the laws of the place of asylum so that the provisions of article 8 of our Extradition Treaty with France do not apply.

█ It is the rule in extradition proceedings between states of the Union that the defense of the statute of limitations is one for the demanding state to pass upon when the case comes to trial. Biddinger v. Commissioner of Police, 245 U. S. 128, 38 S.Ct. 41, 62 L.Ed. 193. It is

argued that, because of the provision of article 8 and of the canon "expressio unius exclusio alterius," the contracting sovereigns must have intended that only the statute of limitations of the country to which the requisition is addressed should be considered in extradition proceedings and that the application of the statute of the demanding state should be left for determination by the courts of the latter.

We are, however, referred to certain decisions of foreign courts, particularly of the courts of The Argentine and of Switzerland, which seem to have held that extradition should not be granted upon the demand of a foreign state if it appears that the prosecution of the accused is barred by the statute of limitations of the demanding country. In this view a number of text-writers appear to concur, and in the extradition of one Vizcarra to Mexico, our State Department passed on the question whether, upon the evidence before the Commissioner, the crime was barred by limitation in Mexico. Digest of International Law, John Bassett Moore, vol. 4, p. 404. See, also, comment on Article 4 of Draft Code on Extradition, Research in International Law, Harvard Law School, 29 American Journal of International Law Supp. Jan.–July, p. 103. But we need not decide whether, under the treaty with France, the determination of the scope of the French statute of limitations should be left to the courts of that country and may assume that we should ourselves interpret it for the purposes of extradition, since we are convinced that on the proofs the French statute has not run.

The following sections of the French Code of Criminal Procedure set forth the statutes of limitation which are thought by appellant or appellee to be applicable to the facts before us.

Section 635, as translated in English, provides:

"The punishment imposed by judgments in criminal matters shall be outlawed after twenty years from the date such judgments have been rendered. * * *"

Section 637 provides:

"The public action and the civil action resulting from a crime of a nature carrying the death penalty * * * shall be outlawed after ten years from the date of the commission of the crime, provided no proceedings of investigation or prosecution have been instituted within said period.

"If in the interval proceedings of investigation or prosecution have been instituted not followed by a judgment, the public action and the civil action shall not be outlawed until after ten years from the last proceeding. * * *"

It is contended by counsel for the relator that the judgment rendered against him by the French Court of Assizes is no more than an indictment or charge, and accordingly that section 637, which outlaws prosecution after 10 years from the last proceeding, applies and that the action against him in France is barred. In support of this contention we are referred to two decisions in the Southern District of New York, namely, Ex parte Fudera, C.C., 162 F. 591, and Ex parte La Mantia, D.C., 206 F. 330, in which Judge Ward held that judgments by Italian courts in contumaciam were to be regarded as charges rather than convictions of crime in respect to the requirements of our statutes regarding proof of probable cause in extradition proceedings. Chelmsford, L. C., reached a similar conclusion as to the nature of a judgment of conviction "par contumace" under the law of France in In re Coppin, L.R. 2 Ch.App. 47 (1866). See, also, Hyde International Law, vol. 1, § 327, pp. 59–91.

Section 476 of the French Code of Criminal Procedure defines the rights of persons convicted "par contumace" as follows: "If the accused surrenders, or if he is arrested before the penalty is barred by prescription, the judgment rendered par contumace and the measures taken against him after the warrant of arrest or his appearance shall be vacated as of right, and he shall be proceeded against in the ordinary form."

Yet, however vulnerable may be a judgment par contumace under the French rules of criminal procedure and however absolute the right of the accused to appear, have the judgment vacated and defend, the Court of Cassation held in the case of Semonin (December 5, 1861, D.P. 62 1, 399) that the statute of limitations applicable to such a judgment was 20 and not 10 years. The Court of Cassation spoke as follows: "* * * the judgment * * * when rendered in contumaciam, has the effect of cutting off the period of limitations applicable to a public action and of substituting therefor the statutory limitation applicable to the punishment decreed by such judgment. * * *

"* * * the punishment decreed by judgment in contumaciam against Semonin * * * is not outlawed until twenty years have elapsed since the judgment in contumaciam was rendered. * * *"

It was conceded on argument that the Semonin case correctly set forth the French law.

But we are referred to decisions of The Argentine courts in Extradition of Mastrangelo (1897) 71 Fallos 182, Extradition of Orsini (1901) 90 Fallos 409, and Extradition of Viscussi (1907) 108 Fallos 181, all dealing with requests for extradition by the Kingdom of Italy where there had been an Italian judgment of conviction in contumaciam. In each case The Argentine court apparently applied the statute of limitations of the demanding state applicable to prosecutions rather than to judgments of conviction.

It is true that in the present proceeding the French government submitted the proofs taken in France under which the judgment par contumace was rendered, and not the judgment only. It is said that this shows that reliance was placed on the charge against Caputo in the foreign country buttressed by proof of probable cause rather than upon the judgment of conviction. But the issue we have to deal with is not what proof of probable cause has been submitted as a basis for extradition but whether the judgment par contumace is outlawed. The relator relies on the statute of limitation of France and the French courts have held that a judgment par contumace, however much it may resemble an indictment, has sufficient attributes of a judgment so that it is not barred until after 20 years from the date of rendition. Its nature is thus explained in Dalloz—R.P.—Contumace No. 40:

"The judgment in contumaciam is deemed as finally rendered and this not under conditions suspending its effectiveness to the time after the expiration of the period of statutory limitation, but on condition of repeal in the event of personal appearance of the person sentenced. The sentenced fugitive from justice is not sentenced on condition that the status of a fugitive sentenced in absentia shall continue for twenty years, but he is finally sentenced subject to the sentence being quashed in the event of personal appearance within the period of statutory limitation. In brief it is not the expiration of the period of limitation that causes the judgment to be followed by the

results it calls for but it is the personal appearance of the fugitive which retroactively annuls the effect produced by the judgment."

We are not concerned with completely rationalizing the process by which a judgment par contumace is in some aspects treated by the French law as a mere charge and in other respects as a judgment, since we find that such a judgment is not barred for 20 years and that consequently the extradition of Caputo should be allowed. Accordingly we hold that the writ of habeas corpus was properly dismissed by the court below.

The order is affirmed.

MANTON, Circuit Judge (dissenting).

The question here is one of international extradition, and should be decided according to the provisions of the Extradition Convention between this country and France, aided, if need be, by the accepted principles and practice of international law. United States v. Rauscher, 119 U.S. 407, 414, 415, 7 S.Ct. 234, 30 L.Ed. 425; Tucker v. Alexandroff, 183 U.S. 424, 437, 22 S.Ct. 195, 46 L.Ed. 264.

Article 1 of the Convention of January 6, 1909, 37 Stat. 1527, engages the two countries "To deliver up persons who, having been charged with or convicted of any of the crimes or offences specified in the following article, committed within the jurisdiction of one of the contracting Parties, shall seek an asylum or be found within the territories of the other: Provided That this shall only be done upon such evidence of criminality as, according to the laws of the place where the fugitive or person so charged shall be found, would justify his or her apprehension and commitment for trial if the crime or offence had been there committed."

Article 2 makes "murder" an extraditable offense.

Before extradition can be granted under these two articles, it must clearly appear that the crime with which relator is charged is actually punishable under French law.

Article 3 provides that "If the person whose extradition is requested shall have been convicted of a crime or offence, a duly authenticated copy of the sentence of the court in which he was convicted, or, if the fugitive is merely charged with a crime or offence, a duly authenticated copy of the warrant of arrest in the country where the crime or offence has been committed and of the depositions or other evidence upon which such warrant was issued, shall be produced."

The French government has furnished our government the evidence required under article 3 for the extradition of relator as one charged with crime; and on November 30, 1936, the State Department issued its warrant, pursuant to article 4 of the Convention, reciting that the French Embassy had made application for the arrest of relator "charged with the crime of murder." This warrant went on to authorize the peace officers of the United States to proceed to the apprehension of relator in order that the evidence of his criminality might be heard and considered and, if deemed sufficient to sustain the charge, that the same might be certified to the Secretary of State. The effect of this warrant is to inform the authorities called upon to act under the treaty that the proceeding falls within its scope and has had the sanction of the Executive Department (Ex parte Van Hoven, 28 Fed.Cas. p. 1021, No. 16,859; In re Kelly, C.C., 26 F. 852, 855), and to fix specifically the matter which our authorities are called upon to investigate. In re MacDonnell, 16 Fed.Cas. p. 51, No. 8,771. So that the action of both governments in the instant case has been to treat this proceeding as a demand upon an indictment under the treaty and not upon a conviction.

There is among the documents submitted by the French government what is called a judgment par contumace; but both governments have acted here upon the assumption that in demanding and sanctioning relator's surrender under articles 1 and 2 of the Convention, they were treating such judgment as the exact equivalent of an indictment; and, unless obviously unreasonable, this practical construction of the terms of the treaty and of the character of the judgment par contumace should be accepted by this court. Sullivan v. Kidd, 254 U.S. 433, 442, 41 S.Ct. 158, 161, 65 L.Ed. 344; Factor v. Laubenheimer, 290 U.S. 276, 54 S.Ct. 191, 78 L.Ed. 315. Moreover, our State Department in 1889, in construing article 1 of the Extradition Convention of 1887 with the Netherlands, which, like the treaty now before us, provided for the surrender of persons convicted of or charged with certain crimes, took the position that the surrender of a fugitive upon a judgment par contumace "is not demand-

able under the treaty as that of a person convicted of the offense in question, but only as of one charged with it, and entitled to be tried therefor after due notice and opportunity to make defense. The Department is of opinion that the term 'convicted' in the treaty applies only to such a conviction, and not to a judgment of guilt pronounced in contumaciam." 1 Moore, Treatise on Extradition, 133.

Moore writes (volume 1, op. cit., § 102, p. 131): "Persons convicted par contumace, in countries where judgments of that character are rendered in the absence of the defendants, are treated in extradition proceedings as persons charged with and not convicted of crime. The judgment par contumace is not a definitive judgment. On the contrary, if the defendant afterward personally appears, he is entitled to his trial as if no such judgment had been rendered against him."

Hyde writes (1 Internatl.Law, § 327, pp. 590, 591): "The agreement expressed in numerous conventions to deliver up persons convicted of crimes is interpreted both by the political and judicial departments of the United States as applicable solely to a fugitive whose conviction takes place while he was in the custody of the demanding government. In case the trial and conviction are subsequent to the escape of the accused, so that the judicial decree is par contumace, he is regarded as one merely charged with the commission of the crime. Hence in the judicial proceedings following the requisition for his surrender, such evidence of criminality must be offered as is required in any case of one charged with the commission of an extraditable offense."

The American and English cases in which the character of a judgment par contumace as a mere indictment has been considered are: Ex parte Fudera, C.C., 162 F. 591; Ex parte La Mantia, D.C., 206 F. 330; In re Coppin (1866), 2 Chancery Appeal, 47.

In the Coppin Case, supra, Lord Chelmsford, L. C., considered at great length the character and effect of such judgment, with reference especially to the extradition treaty between France and Great Britain, and concluded with these words: "And as upon his appearance, or upon his apprehension, the judgment against him is annulled, and he is to be put upon his trial for the offense, I do not see how he can be described otherwise than as an accused person."

The industry of counsel for relator has brought to our attention two cases in the Supreme Court of Argentine which are in agreement with the views above expressed. Those cases should be respectfully considered by our courts to help us in adopting the rule which should prevail in a case involving principles of international extradition hitherto unknown to our jurisprudence. Thirty Hogsheads of Sugar v. Boyle, 9 Cranch 191, 198. In one of these cases (Extradition of Mastrangelo, 71 Fallos, 182, 188–9) the court said:

"That pursuant to article 543 of the Code of Criminal ‘Procedure of the Kingdom of Italy, one condemned par contumace to punishment who surrenders voluntarily at any time or is arrested or comes into the hands of the authorities before the punishment is outlawed, must be tried upon the merits of the offense and given the right to make his defense the same as if he had not been convicted par contumace, and the judgment against him vacated.

"That consequently, it cannot be said that we are dealing with a request for extradition based upon a judgment irrevocably pronounced; and this warrants us in regarding it in the light of a demand for a person accused and not for an individual already condemned."

In the other case (Extradition of Viscussi, 108 Fallos 181, 200 [Argentine]) the court said: " * * * we have before us, not one sentenced by irrevocable judgment, but one accused who is entitled to be heard and even to be acquitted, according to Italian law."

Appellant relies on section 637 of the French Code of Criminal Procedure which provides:

"The public action and the civil action resulting from a crime of a nature carrying the death penalty, * * * shall be outlawed after ten years counted from the day of the crime, if, in the meantime no act of investigation or prosecution has been done.

"If, in the meantime, acts of investigation or of prosecution shall have been done, not followed by judgment, the public action and the civil action shall not be outlawed until after ten years from the last act, even as to persons who may not be implicated in such act of investigation or of prosecution."

He has shown that the last act or proceeding of investigation or prosecution done or conducted by the French government was

the judgment par contumace rendered by the French courts on January 30, 1924, and that nothing was done by that government until November 30, 1936, to stop the running of the 10-year period. This is not contradicted by the demanding government.

The French government, on the other hand, contends that section 635 of the French Code of Criminal Procedure applies. This section provides: "The punishment imposed by judgments in criminal matters shall be outlawed after twenty years from the date such judgments have been rendered."

Reliance is also placed by the demanding government on the Semonin Case (decided in 1861 by the Court of Cassation of France) which says (D.P. 62.1.399): " * * * the punishment decreed by the judgment in contumaciam against Semonin * * * is not outlawed until twenty years have elapsed since the judgment in contumaciam was rendered."

The choice which this court should make lies between sections 635 and 637 in the light of the character and legal effect of a judgment par contumace under the Extradition Convention between the two countries. In other words, is a judgment par contumace a definitive or irrevocable judgment under article 1 of the Convention? If it is, then section 635 must apply; but, if it is not a definitive or irrevocable judgment, but only an indictment, then section 637 should apply. The authorities are agreed that under the treaties such judgment is nothing more than an indictment. And since the treaty of 1909 must be taken as the primary rule of decision for our courts in this case, we should apply that section of the French Code of Criminal Procedure which fits better into our construction of the treaty. The majority opinion, in preferring section 635 or the 20-year statute, subordinates the treaty to French law, instead of subordinating French law to the treaty, which is the only legal basis upon which France can claim relator's extradition. If France had demanded relator's surrender under article 1 of the Convention as one convicted of crime under French law, the State Department, in view of its known attitude with respect to the character of judgments par contumace under the treaties, would probably have declined, and rightly so, to issue its mandate; and the fact that the French government, in asking for the surrender of relator as one charged with crime, treated such judgment as an indictment, is a clear admission by that government that the character and effect of such judgment under French law must be subordinated to its character and effect under the extradition convention. If this is correct, it is difficult to understand on what ground that government can now claim that we are concerned here with a judgment rather than with an indictment. If such judgment was merely an indictment under the treaty when the demand for the executive mandate was made upon the State Department, on November 30, 1936, no subsequent event has changed the attitude of our State Department or has converted such indictment into a definitive or irrevocable judgment under that treaty. In the Mastrangelo Case, supra, the Italian government demanded the surrender of one of its own subjects who had been convicted in Italy of murder by judgment in contumaciam. He pleaded the statute of limitations of Italy as a bar to his surrender, and showed that under the Italian Code of Criminal Procedure a judgment in contumaciam was revocable; that the right to prosecute him for murder expired in 15 years; and that the period of prescription for the death penalty was twenty years. Under Italian law the 20-year statute applies to a judgment in contumaciam (3 Manzini, Trattato di Diritto Penale Italiano [1934] p. 458). On these facts, the Supreme Court of Argentine, reversing the lower court which had held that the 20-year statute applied, proceeded to view the judgment in contumaciam as a mere indictment, and to apply the 15-year statute. His release was ordered.

In another case (Extradition of Viscussi, supra), the same court, upon substantially the same facts, affirmed the judgment of the federal Court of Appeals of Buenos Aires which said: "That this legal situation places the prisoner Viscussi in the position of one accused; and the prescription which must be considered is that which applies to a prosecution."

The judgment of affirmance held that a judgment in contumaciam is merely an accusation; proceeded to apply the statute of limitations properly applicable to accusations, and found that the fugitive was protected from further prosecutions. His release was also ordered.

Reference has been made to article 8 of the Extradition Convention, 37 Stat. 1531, which provides: "Extradition shall not be granted, in pursuance of the provi-

sions of this convention, * * * if legal proceedings or the enforcement of the penalty for the act committed by the person claimed have become barred by limitation, according to the laws of the country to which the requisition is addressed."

This provision must be construed in the light of the international law and practice of extradition, and that law and practice do not exclude recourse to the statute of limitations of the demanding state. Article 359, Convention on Private International Law, Sixth International Conference of American States [1928]; Article 3, Convention on Extradition, Seventh International Conference of American States [1933]; Article 4, Draft Code on Extradition, Research in International Law, Harvard Law School [1935], 29 Amer.Journal of Int.Law, Supp. Jan.–July. This is also the law of France. Her Extradition Law of March 10, 1927, provides article 5 (5.0):

"Extradition shall not be granted:

* * *

"5. When, according to the laws of the demanding State or of the surrendering State, the action has been outlawed prior to the demand for extradition, or the penalty has been outlawed prior to the arrest of the individual requested, and in a general way whenever the public action of the demanding state has been outlawed."

It should be noted that this law was enacted by the French government in the face of article 8 of the Convention, and must be taken as an authoritative construction by one of the contracting parties of the meaning of the article. Nothing has been done by our own government to show its displeasure or disapproval of the meaning attached to that article by the French statute.

Support for the position taken here will be found in the case of Extradition Marcellin, decided by the Federal Tribunal of Switzerland in 1918 (44 Arrets du Tribunal federal suisse 177). The French Embassy demanded the extradition of Marcellin, a Frenchman. With the demand was an order of arrest dated October 11, 1912, and a copy of a judgment of conviction par contumace dated February 13, 1913, condemning him to 4 years' imprisonment for fraudulent conversion. The Treaty of Extradition of 1869 between the two countries contained this provision, article 9: "The extradition may be refused, if the punishment or the prosecution is outlawed according to the laws of the country of refuge, after the acts imputed or after the prosecution or conviction."

The accused relied, not on the Swiss statute of limitations but upon the French statute. The question was whether the fugitive could invoke the French statute upon the face of article 9 which provided for the application of the Swiss law to the plea of limitations. The court said: "It is logical to interpret Article 9 in the sense that the extradition may also be refused when the prescription has taken place according to the law of the demanding state. If the treaty does not say so expressly, its silence on this question is explained, in effect, by the reason that since the extradition demand presupposes the punishableness of the act imputed according to the law of the demanding state, the refusal of the extradition in the case where this condition does not exist follows naturally, and there is no need to provide for it expressly in the treaty. But the same is not true in the case where the prescription takes place according to the law of the state of asylum; in this contingency the natural presumption rather is that the law of the state of asylum is helpless to bring about the prescription with respect to an offense committed in the demanding country and subject to its jurisdiction; consequently, it becomes necessary, in order that the extradition may be refused, to stipulate for it expressly in the treaty."

Since, therefore, appellant stands before us as charged with, and not as convicted of, crime under the treaty, this court should apply to him section 637 of the French Code of Criminal Procedure, or the 10-year statute, which is the statute properly applicable to indictments or accusations; and, since more than 10 years have elapsed between the date of the judgment par contumace of January 30, 1924, and the date of the demand of the French Embassy upon our State Department on November 30, 1936, he is fully protected against surrender on the present demand.

The order should be reversed.