# Application of the Federal Water Pollution Control Act to the Former Panama Canal Zone

The Panama Canal Treaty and its implementing legislation make U.S. laws based on territorial jurisdiction, including the Federal Water Pollution Control Act, inapplicable to the former Panama Canal Zone. Both the Treaty negotiators and Congress expected environmental problems in the former Canal Zone to be dealt with jointly by the United States and Panama through the Joint Commission on the Environment.

March 17, 1981

MEMORANDUM OPINION FOR THE ASSISTANT LEGAL
ADVISER FOR INTER-AMERICAN AFFAIRS, DEPARTMENT
OF STATE

This responds to your request for our opinion whether the Federal Water Pollution Control Act (FWPCA), 33 U.S.C. § 311 of § 1321, applies to the former Panama Canal Zone. The several agencies that have analyzed this question have reached contrary conclusions. We have reviewed the memoranda prepared by these agencies and independently reviewed the text of the Panama Canal Treaties [1] and related documents and legislation. For reasons set forth below, we conclude that the FWPCA does not apply to any portion of the former Canal Zone.

In the FWPCA, Congress declares that there should be no discharge of oil or hazardous substances into or upon "the navigable waters of the United States or adjoining shorelines or the waters of the contiguous zone," and imposes a civil penalty on any owner or operator of a vessel, on-shore facility, or off-shore facility from which oil or a hazardous substance is discharged. 33 U.S.C. § 1321(b). The President is authorized to remove discharged oil or hazardous substances and the party responsible for the discharge is liable for removal costs. 33 U.S.C. § 1321(c), (f), (g). The Administrator of the Environmental Protection Agency, the Secretary of the Department in which the Coast Guard is operating, the Council on Environmental Quality, and other officials

---

[1] Two treaties between the Republic of Panama and the United States were signed on September 7, 1977: the Panama Canal Treaty 33 U.S.T. ____, T.I.A.S. No. 10030, and the Treaty Concerning the Permanent Neutrality and Operation of the Panama Canal. 33 U.S.T. ____, T.I.A.S. No. 10029. Hereinafter, references to the "Treaty" refer to the Panama Canal Treaty, unless otherwise specified.

are given responsibilities either directly by the Act or by delegation from the President. *Id.;* Executive Order No. 11,735 38 Fed. Reg. 21243 (1973). The Act is applicable only to navigable waters of the United States, adjoining shorelines, and waters of the contiguous zone.[2] The Act defines "United States" to include the Canal Zone; thus, prior to the Canal Zone's change in status, the Act clearly was applicable. The question here is whether the Panama Canal Treaty and implementing legislation render the Act inapplicable to the former Canal Zone.

We first examine the Treaty itself. Under the original 1903 treaty with Panama, the United States obtained the right to exercise plenary administrative and legislative jurisdiction over the Canal Zone as if the United States were sovereign over the Zone. 33 Stat. 2234, T.S. No. 431, (1903). The recent Treaty substantially alters this relationship. Under the Treaty, the Canal Zone itself loses its legal identification and Panama resumes administrative and legislative jurisdiction over the territory lying within the former Zone. The Treaty provides in Article XI, that "[t]he Republic of Panama shall reassume plenary jurisdiction over the former Canal Zone upon entry into force of this Treaty and in accordance with its terms." As territorial sovereign, Panama grants to the United States for the duration of the Treaty [3] "the rights necessary to regulate the transit of ships through the Panama Canal, and to manage, operate, maintain, improve, protect and defend the Canal." Thus, Panama grants to the United States the right to use, for these purposes, the various installations and areas including the Canal and its waters.

The Treaty deals less clearly with the question what law shall govern these areas. Paragraph 1 of Article IX of the Treaty specifies that the laws of the Republic of Panama shall apply in the areas made available for use of the United States, although paragraph 8 prohibits Panama from adopting any law or taking any action that would interfere with rights granted under the Treaty to the United States. Paragraph 7 of Article XI provides that "[t]he laws, regulations, and administrative authority of the United States . . . shall, to the extent not inconsistent with this Treaty, and related agreements, continue in force for the purpose of exercise by the United States of America of law enforcement and judicial jurisdiction only during the transition period."

Treaties are to be construed "with the highest good faith" with an eye to the "manifest meaning of the whole treaty." *Johnson* v. *Browne,* 205 U.S. 309, 321–22 (1907). Construing these Treaty provisions consistently and in keeping with the purpose of the Treaty, we conclude that

---

[2] The "contiguous zone" is defined as "the entire zone established or to be established by the United States under article 24 of the Convention on the Territorial Sea and the Contiguous Zone." 33 U.S.C. § 1321(a)(9)

[3] The Treaty terminates on December 31, 1999. Art II, ¶ 2

the laws of the United States regarding water pollution are not applicable in the former zone.[4]

In interpreting a treaty and other international agreements, the construction placed upon it by the Department charged with supervision of our foreign relations should be given much weight. *Kolovrat* v. *Oregon*, 366 U.S. 187, 194 (1961); *Factor* v. *Laubenheimer*, 290 U.S. 276, 294–95 (1933); *Sullivan* v. *Kidd*, 254 U.S. 433, 442 (1921). Here, the State Department consistently has taken the position that the FWPCA is inconsistent with, and thus superseded by, the Panama Canal Treaty. In connection with the hearings on ratification of the Treaty, the Secretary of State specifically listed the FWPCA, 33 U.S.C. § 1321(a)(5), as a statute that would be superseded by the Treaty.[5] In 1980, the State Department Legal Adviser's Office opined that "any laws of the United States based on territorial jurisdiction (such as the FWPCA) have become, by virtue of the Treaty, inapplicable in Panama." [6]

This interpretation of the Treaty is consistent with the Panama Canal Act of 1979 (Canal Act), 22 U.S.C. § 3601, legislation passed to implement the Treaty.[7] The Canal Act provides:

> Subject to the provisions of subsection (c) of this section, for the purposes of applying the . . . laws of the United States and regulations issued pursuant to such . . . laws with respect to transactions, occurrences, or status on or after October 1, 1979—
>
> (1) "Canal Zone" shall be deemed to refer to the areas and installations in the Republic of Panama made available to the United States pursuant to the Panama Canal Treaty of 1977 and related agreements; . . .

22 U.S.C. § 3602(b)(1). Subsection (c), referred to above, provides:

> Any reference set forth in subsection (b) of this section shall apply except as otherwise provided in this chapter or unless (1) such reference is inconsistent with the provisions of this chapter, (2) in the context in which a term is used such reference is clearly not intended, or (3) a term refers to a time before October 1, 1979.

---

[4] It is true that repeals by implication are not favored and that a treaty will not be regarded as repealing an earlier statute by implication unless the two are absolutely incompatible and the statute cannot be enforced without antagonizing the treaty. *Johnson* v. *Browne*, 205 U.S. 309, 321 (1907). Where there is such a conflict, however, it is resolved in accordance with the same rule of priority that governs the resolution of conflicts between statutes. The later in time prevails. *Cook* v *United States*, 288 U.S. 102, 118–19 (1933).

[5] *Panama Canal Treaties: Hearings on Executive N Before the Committee on Foreign Relations*, 95th Cong., 1st Sess. 80–82 (1977).

[6] Letter from the Acting Assistant Legal Adviser for Inter-American Affairs to an attorney with the Federal Maritime Commission (August 15, 1980).

[7] The Act was intended by Congress to implement, and to be fully consistent with, the Panama Canal treaties. H.R. Rep. No. 94, 96th Cong., 1st Sess. (pt. I) 7–9 (1979).

22 U.S.C. § 3602(c). If subsection (b) were not qualified by subsection (c), one could interpret subsection (b) to require that the term "Canal Zone" in the FWPCA be read to refer to areas and installations in Panama made available to the United States pursuant to the Treaty and related agreements. These areas include the land and water areas encompassing a "continuous area generally following the course of the Panama Canal and generally contiguous to it . . .," [8] and thus the FWPCA would apply to the navigable waters of the Canal. Subsection (c), however, precludes application of this definition of "Canal Zone" if such reference is inconsistent with the Canal Act or if such reference clearly is not intended. Just as enforcement of the FWPCA in the Canal area would be inconsistent with the Treaty, so would it be inconsistent with the Canal Act. In our opinion, such a reference was not intended and the subsection (c) exception must be invoked.

As does the Treaty, the Act contains provisions which indicate it was not intended that the FWPCA would apply to the former Zone. The Panama Canal Commission, for example, was created as an agency of the Executive Branch to maintain and operate the Canal. Treaty, Art. III, ¶ 3; 22 U.S.C. § 3611. The Commission comprises both United States nationals and Panamanian nationals, with the Panamanians assuming increasing management responsibilities throughout the treaty period. The Annex to the Treaty specifically provides that "[i]t is understood that the Panama Canal Commission . . . may perform functions such as . . . protection of the environment by preventing and controlling the spillage of oil and substances harmful to human or animal life and of the ecological equilibrium in areas used in operation of the Canal and the anchorages." Treaty Annex, ¶ 3n. The authors thus contemplated that the Commission would be performing this function, not the Administrator of the Environmental Protection Agency or other United States officials. To draw these United States officials into the decisionmaking process by applying United States law could undercut the participation of Panamanian nationals and undermine the goal of having Panamanian policymakers, managers, and employees in place and fully prepared to assume the responsibilities that will devolve upon Panama when the Treaty terminates. *See* H.R. Rep. No. 94, 96th Cong., 1st Sess. (pt. IV) 13 (1979).

Another indication that both the treaty negotiators and Congress expected environmental problems to be dealt with jointly by the United States and Panama is the creation of a Joint Commission on the Environment. Treaty, Art. VI, ¶ 2; 22 U.S.C. § 3616. This Commission, established with equal representation from the United States and Panama, recommends to the two governments ways to avoid or to

---

[8] Treaty, Art. III, ¶ 2(a); Treaty, Agreement in Implementation of Article III (Sept. 7, 1977), 33 U.S.T _____, T.I A.S. No. 10031, Art. III, ¶ 1 and annex A, ¶ 1(a)(i).

mitigate adverse environmental impacts. Article VI, ¶ 1 of the Treaty explains the underlying policy:

> The United States . . . [and] Panama commit themselves to implement this Treaty in a manner consistent with the protection of the natural environment of the Republic of Panama. To this end, they shall consult and cooperate with each other in all appropriate ways to ensure that they shall give due regard to the protection and conservation of the environment.

In authorizing the establishment of the Joint Commission on the Environment, the House Committee on Foreign Affairs stated its intent that "the [Commission] be broad enough to deal with the entire range of environmental issues which might arise anywhere within the Panama Canal Watershed region." H.R. Rep. No. 94, 96th Cong., 1st Sess. (pt. I) 12–13 (1979).

Attempting to apply the FWPCA to the Canal area after passage of the Canal Act also would raise jurisdictional problems. The FWPCA provides that in cases under the Act arising in the Canal Zone, actions may be brought in the United States District Court for the District of the Canal Zone. 33 U.S.C. § 1321(n). Yet under the Canal Act and the Treaty, jurisdiction of the courts of the United States functioning in the former Canal Zone is severely restricted and would not include jurisdiction over new suits arising out of the FWPCA. *See* Treaty, Art. XI, ¶ 5; 22 U.S.C. § 3841(a).[9]

Throughout the legislative history of the Canal Act, there are references to the fact that United States territorial jurisdiction over the Panama Canal area has ceased. With respect to the redefinition of the Canal Zone quoted above,[10] the House Committee on Foreign Affairs wrote:

> Notwithstanding section 2(c)(1)(A) of the bill, as reported, which establishes the general rule that laws of the United States presently applicable in the Canal Zone will continue to apply to areas and installations made available to the United States pursuant to the Panama Canal Treaty, laws which are presently applied to the Canal Zone on the basis of territorial jurisdiction of the United States

---

[9] We note also that the Treaty Concerning Permanent Neutrality and Operation of the Panama Canal contains a provision that as a pre-condition of transit, vessels may be required to establish the financial responsibility and guarantees for payment of damages resulting from acts or omissions of such vessels when passing through the Canal, "consistent with international practices and standards." Treaty Concerning Permanent Neutrality, *supra,* Art. III, ¶ 1(d) If the FWPCA applied to the Canal area during the period of management by the United States, the Treaty provision referred to above would conflict with 33 U.S.C § 1321(p), which requires large vessels carrying oil or hazardous substances to establish and maintain, under applicable federal regulations, evidence of financial responsibility in set amounts.

[10] 22 U S.C. §§ 3602(b), (c)

over the zone will continue to apply in these areas and installations *only* for the purpose of exercising authority vested in the United States by the Treaty and related agreements. This limited application of the U.S. law is necessitated by the termination of the U.S. territorial jurisdiction effected by the Treaty.

H.R. Rep. 94, 96th Cong., 1st Sess. (pt. I) 12 (1979). The House Committee on Merchant Marine and Fisheries also emphasized that the laws of the United States, insofar as they are applicable by virtue of territorial jurisdiction of the United States in the Canal Zone prior to the Treaty, continue in force only for the purposes of exercising the authority vested in the United States by the Treaty. H.R. Rep. No. 98, 96th Cong., 1st Sess. (pt. I) 41 (1979). The specific phrase that referred to territorial jurisdiction was dropped from the final version of the bill, but there is no indication that Congress intended by this deletion to assert territorial jurisdiction over the canal areas. Certainly such an attempt would have provoked much debate.[11]

We note that at least one other agency, whose jurisdiction included the Canal Zone pursuant to a statutory provision similar to the FWPCA, has concluded that the law it administers no longer applies in the former Zone. The Zone was eligible for assistance under the Disaster Relief Act because § 102(4) of that Act, 42 U.S.C. § 5122(4), defines "State" to include the Canal Zone. The Federal Emergency Management Agency has determined, however, that the area formerly known as the Canal Zone is no longer eligible for disaster assistance: "With the ratification of the Panama Canal treaties this area became territory within the Republic of Panama on October 1, 1979, and is, therefore, excluded from assistance under the Disaster Relief Act of 1974." 44 Fed. Reg. 66,062 (1979).[12] The principle of harmony in statutory law dictates that, wherever possible, statutes should be construed consistently and harmoniously. *Hyrup* v. *Kleppe*, 406 F. Supp. 214, 217 (D. Colo. 1976); Sutherland Statutory Construction § 53.01 (Sands ed., 1973 & Supp. 1980).

---

[11] The General Counsel's office of the Federal Maritime Commission has asserted that the FWPCA is not based solely on territorial jurisdiction and may be applied in areas that are not strictly part of the United States' territorial jurisdiction Cited in support of this assertion is § 311(b)(1), 33 U.S.C. § 1321(b)(1), in which Congress declares that it is the policy of the United States that there should be no discharges.

> into or upon the navigable waters of the United States, adjoining shorelines, or into or upon the waters of the contiguous zone, or in connection with activities under the Outer Continental Shelf Lands Act or the Deepwater Port Act or which may affect natural resources belonging to, appertaining to, *or under the exclusive management authority* of the United States . .

(Emphasis added, citations omitted.) The former Canal Zone fits into none of these categories, however. Given the unique nature of the responsibilities of the United States in operating the Canal under the treaty terms, and the participation of Panamanian nationals both on the Panama Canal Commission and the Joint Commission on the Environment, the waters of the Canal cannot accurately be said to be under the *exclusive* management authority of the United States

[12] The Panama Canal Act of 1979 authorizes the Panama Canal Commission to expend appropriated funds to deal with emergencies. 22 U S.C. § 3753.

85

For these reasons, we conclude that the FWPCA does not apply to any part of the former Canal Zone.

LARRY L. SIMMS
*Acting Assistant Attorney General*
*Office of Legal Counsel*