**BUSEY, Collector of Internal Revenue, v. DESHLER HOTEL CO.**

No. 8982.

Circuit Court of Appeals, Sixth Circuit.

July 8, 1942.

188

Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, J. L. Monarch, and Fred J. Neuland, Sp. Assts. to Atty. Gen., Leo Calvin Crawford, of Dayton, Ohio, and Justin H. Folkerth, of Columbus, Ohio, for appellant.

Butler & Summer, of Columbus, Ohio, for appellee.

Before SIMONS, ALLEN, and MARTIN, Circuit Judges.

MARTIN, Circuit Judge.

On the original hearing of this cause, the judgment of the district court in favor of the appellee taxpayer was affirmed on order, inasmuch as the findings of fact, conclusions of law and opinion of the district judge made clear the correctness of the decision below.

After entry of the order of affirmance, appellant presented supplemental memoranda, embracing legislative history of the pertinent Revenue Act and appertaining treasury regulations and examples not previously submitted. Upon application for rehearing, the previous decision was withdrawn, pending further consideration. After weighing the supplemental data and the new arguments of appellant, the majority of the court adheres to the original unanimous decision that the judgment of the district court should be affirmed.

That judgment, from which the Collector of Internal Revenue has appealed, awarded a refund, with interest, of penalties amounting to $6,056.70 collected from appellee under Sec. 1114(d) of the Revenue Act of 1926, 26 U.S.C.A. Int.Rev.Acts, page 325. These penalties had been assessed and collected under protest from appellee, for failure of the appellee hotel company to collect and account for taxes on admissions to one of its dining rooms. The insistence of appellant was, and is, that the taxes were properly assessed and collected pursuant to Sec. 500(a) (5) of the Revenue Act of 1926, 26 U.S.C.A. Int.Rev.Acts, page 272, which imposes a "tax of 1½ cents for each 10 cents or fraction thereof of the amount paid for admission to any public performance for profit at any roof garden, cabaret, or other similar entertainment, to which the charge for admission is wholly or in part included in the price paid for refreshment, service, or merchandise; the amount paid for such admission to be deemed to be 20 per centum of the amount paid for refreshment, service, and merchandise; such tax to be paid by the person paying for such refreshment, service, or merchandise." The statute further provided that "where the amount paid for admission is 50 cents or less, no tax shall be imposed."

A jury being waived, the district court tried the case upon stipulated facts, supplemented by exhibited newspaper advertisements and numerous menus showing prices charged for food and drink in the three dining rooms of appellee's one-thousand-room hotel in Columbus, Ohio. The agreed statement of facts was adopted by the district court and included in its findings. These fact findings will be briefly surveyed.

The three dining rooms in the large, first-class hotel operated by appellee were called, respectively, the Sapphire, the Spanish and the Ionian. The Ionian Room, known also as the Grill Room, was an artistically decorated, low ceilinged, popular-priced restaurant located in the hotel basement. Its seating capacity was approximately 300 people and it was kept open early and late, seven days a week, for the service of breakfast, lunch, dinner, late supper, and alcoholic beverages. Quick service was featured.

Continuously since 1934, the hotel has provided an orchestra or band to play dance music in the Ionian Room, but no special dance floor has been provided. Dancing was made possible for some thirty-six persons simultaneously by the removal of perhaps ten tables from a 22 by 22 foot space in front of the orchestra platform, the total floor space of the Ionian grill room being approximately 4000 square feet. At times, a member of the orchestra would furnish an instrumental solo, or a vocalist member would sing the lyrics of the dance number being played by the orchestra. Neither orchestra nor soloists left the platform. There was no music or dancing on Sundays, and on secular days dancing was limited to periods from 6:00 P. M. to 8:30 P. M., and from 10:00 P. M. to 1:00 A. M.

No door or special charge and no cover or minimum charge was exacted for entry into the Ionian Room. Indeed, the only charge made was for whatever food or drink the entrants chose to purchase. If no purchase was made, no charge was made; and persons dining in the Sapphire and Spanish Rooms were permitted to use, without charge, the dancing facilities of the Ionian Room.

The scale of prices for food and refreshments was lower in the Ionian Room than in the other two dining rooms, which were more exclusive and featured better and more dignified service.

There was no general increase in the prices charged for food, service and beverages in the Ionian Room after the permanent installation of orchestra and band music. The prices charged were the same on Sundays as on week days.

It was stipulated into the record that ten residents of Columbus, Ohio, if called as witnesses, would have testified, that their principal reason for patronizing the Ionian was for music and dancing, and that the room was well known in Columbus as a popular place for dancing.

Among the important findings of fact of the district court were the following:

"13. That prices for food during the late supper hours while the music was playing, were substantially the same as the prices for food during the luncheon hours when no music was playing. That in some instances, the price of an article was slightly higher during the luncheon hours than at the late supper hours; and in some instances, the price of an article was higher at the late supper hours than at the luncheon hours.

"14. That prices for food during the dinner hours when the music was playing were exactly the same as the prices during the luncheon hours when no music was playing.

"15. That the prices of beverages, both alcoholic and non-alcoholic, remained constant through all hours of the day and night.

"16. That there was no charge for admission to the Ionian Room included in the prices paid for refreshment, service, or merchandise, or in any other guise.

"17. That said performances in the Ionian Room were public performances.

"18. That said performances were not performances for profit."

Based on its findings of fact, supported by a preponderance of evidence, the district court adjudged that the penalties had been improperly assessed and that the appellee hotel company was entitled to recover the taxes unlawfully exacted by the collector.

Applying the principle of Federal Rules of Civil Procedure, rule 52, 28 U.S.C.A. following section 723c, that findings of fact of a district court shall not be set aside unless clearly erroneous, this court in its order of affirmance recited:

" * * * And it appearing that while appellee employs an orchestra at specified

times which gives public performances in appellee's restaurant called the Ionian Room, appellee does not conduct in its Ionian Room a roof garden, cabaret, or other similar entertainment; and that the district court found as a fact that there is no direct charge for admissions to the Ionian Room; that no charge for admission is either wholly or in part included in the price paid for food, refreshment or service, and that the performances given by such orchestra are not given for profit within the purview of Sec. 500(a) (5) of the Revenue Act of 1926, and it appearing that the record amply sustains such findings;

"It is ordered that the judgment of the district court be, and it hereby is, affirmed."

The majority of the court is of opinion that no new proposition adduced by appellant on rehearing gainsays the correctness of our former decision.

The language of the Revenue Statute, quoted supra, is plain and unambiguous, applying in terms only to any public performance for profit at a roof garden, cabaret, or other similar entertainment, to which the charge for admission is wholly or in part included in the price paid for refreshment, service, or merchandise.

It is contended by the Collector that the vocal and instrumental soloist performances of the orchestra, and the dancing by patrons in the Ionian Room, constituted "other similar entertainment" within the definition of Treasury Regulation 43, 1932 Ed., Article 11, which provides: " 'Any public performance for profit at any roof garden, cabaret, or other similar entertainment' includes every public vaudeville or other performance or diversion in the way of acting, singing, declamation or dancing, either with or without instrumental or other music, conducted for the profit of the management by professionals, amateurs, or patrons under the auspices of the management, in connection with the service of selling of food or other refreshment or merchandise at any room in any hotel, restaurant, hall or other public place. Every form of entertainment so conducted is included except instrumental music unaccompanied by any other form of entertainment."

The Collector buttresses his argument with examples under Article 11 of the Treasury Regulations, whereof the second example reads: "A certain hotel maintains in its lobby a dancing floor surrounded by tables and serves refreshments to its patrons during the dancing hours. No charge is made for dancing. This is a case of a public performance for profit where the amount paid for admission is wholly included in the price paid for refreshments, and there will be a tax, therefore, under these provisions of the Act."

The third example states that it is immaterial whether the dancing facilities furnished are in the dining room or in the lobby of the hotel.

It is contended that the findings of the district court overthrew the interpretation of the Revenue Statute by those charged with its administration.

■ In order to bring an existing situation within the purview of a taxing statute, interpretative treasury regulations and examples should not be permitted to strain the coverage of the statute to a breaking point with the facts of the case.

■ To become binding, interpretative regulations must be reasonable and in furtherance of the intention of Congress, as evidenced by its Acts. An arbitrary regulation of the Commissioner of Internal Revenue is not enforceable. Where the language of a taxing statute is plain and unambiguous, there is no occasion for resort to interpretative promulgations of the Treasury Department. Neither the administrative officers nor the courts may supply omissions or enlarge the scope of the statute. See Iselin v. United States, 270 U.S. 245, 250, 251, 46 S.Ct. 248, 70 L. Ed. 566.

■ This doctrine is not inconsistent with the settled rule that the practical interpretation of an *ambiguous* statute, which has been acted upon by officials charged with its administration, should not be disturbed except for cogent reasons. Brewster v. Gage, 280 U.S. 327, 336, 50 S.Ct. 115, 74 L.Ed. 457.

■ Much stress is laid by appellant upon the reenactment by Congress of the statute under consideration after the promulgation by the Commissioner of regulations substantially equivalent to those in effect during the period with which we are concerned. It is pointed out that Treasury Decision 2603, announced December 4, 1917, pertaining to the statute from which Sec. 500(a) (5) is derived, embraced the following definitions, the first sentence whereof was incorporated into Sec. 800(a)

(6) of the Revenue Act of 1918, 40 Stat. 1121, and retained with substantially the same phraseology in Sec. 500(a) (5) of the Revenue Act of 1926:

"Twenty percent of the amount paid for refreshments, merchandise, service, etc., including any sum paid for seats and tables reserved or occupied, at any public performance for profit at any cabaret or other similar entertainment, to which the charge for admission is wholly or in part included in the amount so paid, shall be regarded and deemed to be paid for admission to such performance. * * *

"A hotel, restaurant, or hall affording, in connection with the service of refreshment, food, or merchandise, entertainment in the form of dancing by its patrons is included."

It is insisted that administrative construction must be deemed to have received legislative approval by the reenactment of a statutory provision without material change. United States v. Dakota-Montana Oil Co., 288 U.S. 459, 466, 53 S.Ct. 435, 77 L.Ed. 893; Helvering v. R. J. Reynolds Tobacco Co., 306 U.S. 110, 116, 59 S.Ct. 423, 83 L.Ed. 536. But in Biddle v. Commissioner of Internal Revenue, 302 U.S. 573, 582, 58 S.Ct. 379, 383, 82 L.Ed. 431, the present Chief Justice said: "Where the law is plain the subsequent re-enactment of a statute does not constitute adoption of its administrative construction."

In Helvering v. Wilshire Oil Co., 308 U. S. 90, 100, 60 S.Ct. 18, 24, 84 L.Ed. 101, the opinion writer said: "The oft-repeated statement that administrative construction receives legislative approval by reenactment of a statutory provision, without material change (United States v. Dakota-Montana Oil Co., supra) * * * does not mean that a regulation interpreting a provision of one act becomes frozen into another act merely by reenactment of that provision, so that that administrative interpretation cannot be changed prospectively through exercise of appropriate rule-making powers."

If the reenactment of a statutory provision does not freeze into the Act an administrative interpretation so as to preclude the prospective rule-making power of the Commissioner of Internal Revenue, why should an administrative interpretation of an unambiguous Revenue Act become refrigerated law, incapable of being melted by a judicial construction of the statute, itself, contrariwise to the administrative interpretation?

It has been suggested that "it would serve the cause of income taxation if the court's decision in this case (Helvering v. Wilshire Oil Co., supra) could be broadened so as to further restrict the effect of artificial rules of statutory construction." Merten's Law of Income Taxation, 1939 Cumulative Supplement, page 2530, footnote 4(c).

Such eventuality apparently has been forecast. Mr. Justice Douglas, who wrote the opinion in the Wilshire case, supra, declared in Helvering v. Reynolds, 313 U.S. 428, 432, 61 S.Ct. 971, 85 L.Ed. 1438, 134 A.L.R. 1155, that the rule of such cases as United States v. Dakota-Montana Oil Company, supra, is no more than an aid in statutory construction and, while useful at times in resolving statutory ambiguities, does not mean that the prior construction has become so embedded in the law that only Congress can effect a change.

In the concluding paragraph of the opinion in Helvering v. Credit Alliance Corporation, 62 S.Ct. 989, 992, 86 L.Ed. —, delivered on April 27, 1942, Mr. Justice Roberts, who wrote the opinion in Helvering v. R. J. Reynolds Tobacco Co., supra, said: "In view of what we have said as to the plain meaning of subsection (f) [26 U.S.C.A. Int.Rev.Acts, page 838], we think that no complexity or confusion is discoverable and that the regulation not only was contradictory of the plain terms of the subsection but attempted to add a supplementary legislative provision, which could only have been enacted by Congress. We hold, therefore, that the court below was right in refusing to give effect to the regulation."

The three dissenting justices based their non-concurrence upon the ground that the treasury regulation resolved ambiguities between sections of the Revenue Act, and was therefore a valid interpretative regulation and a proper exercise of the rule-making authority. In the Revenue Act which we have been called upon to construe, there are no ambiguities.

We think that Herbert v. Shanley Co., 242 U.S. 591, 37 S.Ct. 232, 61 L.Ed. 511, relied upon by the Commissioner, has no true bearing here. That decision merely found infringement of the rights of the owner of a copyrighted musical composition, played by an orchestra in a hotel restaurant where no money was collected at the door. The observations of Mr. Justice Holmes (242 U.S. op. 594, 595, 37

S.Ct. 232, 61 L.Ed. 511) seem inapplicable, for the reason that the Treasury Regula- tion, Article 11, expressly excepts orches- tral music, without more, from the defini- tion "public performances for profit."

We have been aided in our deliberations by a well-reasoned district court opinion in United States v. Broadmoor Hotel Co., 30 F.2d 440, where the facts, though dif- ferentiable in non-essentials, bear general similarity to the situation which we have confronted.

■ To summarize: Sec. 500(a) (5) of the Revenue Act of 1926 is plain and un- ambiguous, leaving no appropriate occa- sion for enlargement of its scope by in- terpretative regulations of the Treasury Department. The Ionian, or Grill Room of the appellee hotel company has been found by the district court upon abundant evidence not to have been as a matter of fact a roof garden, cabaret, or other similar entertainment, *to which the charge for admission was wholly or in part in- cluded in the price paid for refreshment, service, or merchandise*. This finding of fact is deemed determinative of the issue involved.

Accordingly, the judgment of the district court is affirmed.

ALLEN, Circuit Judge (dissenting).

This is a case practically of first im- pression, involving the construction of an important section of the internal revenue law.[1] It therefore seems wise, since I can- not agree with the conclusion of my col- leagues, to state the reasons for my dissent.

The construction of the statute for which appellant contends, in my opinion, is rea- sonable and logical, and is supported not only by consistent administrative construc- tion over a long period, but also by the legislative history of the enactment. While the evidential fact findings are based upon uncontroverted evidence, the ultimate find- ings of the District Court that there was no charge for admission and that the per- formances in the Ionian Room were not for profit involve questions of law and are contrary both to the statute and the ap- plicable decision of the Supreme Court.

In its view that the performances could not have been given for a direct profit for the reason that no admission charge was made and that the expense of the enter- tainment was an overhead expense in- cidental to the class of business in which appellee was engaged, I think that the District Court erred as a matter of law. While the record does not show that the expense of the orchestra is allocated to general overhead, as suggested by the District Court, if it is, the fact remains that part of the charge for food contributes to the maintenance of the orchestra. The charges for services rendered in a hotel are intended to, and in a financially suc- cessful hotel do defray the overhead ex- penses. There is no basis here for the conclusion that the provision of an or- chestra and space for dancing was a gift from the hotel. I cannot conclude that this service, which enhanced the popularity of the dining room and was advertised regularly during the period involved in newspapers of general circulation published in Columbus, Ohio, was free.

While a different statute was involved in Herbert v. Shanley Co., 242 U.S. 591, 37 S. Ct. 232, 233, 61 L.Ed. 511, the question be- fore the court for decision was identical with that presented in the instant case in that it called for examination of the Cir- cuit Court of Appeals' conclusion that per- formances of musical compositions in a hotel dining room did not constitute per- formances for profit. Music was furnished only at certain times, but no admission charges were collected at any time, and no difference was made in the charges for food at the times when music was fur- nished. Mr. Justice Holmes, speaking for the court and holding that the conclusion of the Circuit Court of Appeals was un- tenable, pointed out that the performances were not "eleemosynary," but rather were a part of the total for which the public paid. As he tersely said: "If music did not pay, it would be given up. If it pays, *it pays out of the public's pocket*. Whether it pays or not, the purpose of employing it is profit, and that is enough."

Applying this rule to the instant case, the uncontradicted facts require a finding

[1] In United States v. Broadmoor Hotel Co., D.C.Colo., 30 F.2d 440, the only oth- er case construing this section, the facts differentiate the case. It was there held that the tax could not be collected from a resort hotel which furnished orchestra music for dancing in connection with the service of afternoon tea. A large per- centage of those dancing were not guests of the hotel, did not purchase refresh- ments, or otherwise pay for dancing. The music did not include soloists, either instrumental or vocal.

that the performances were for profit. The conclusion that no charge for admission to the Ionian Room was included in the prices paid for food and refreshment is likewise based upon the untenable premise that the entertainment was free. Since the entertainment was for profit, and no cover, admission or other special charge was made, the charge for admission was entirely included in the price for such services. Therefore the statute squarely applies, and twenty per cent of the charges made is conclusively deemed to be the admission charge.

I think that the entertainment furnished in the Ionian Room is clearly covered by the statute. The District Court made no finding or conclusion as to whether the entertainment comes within the statutory requirement of being "at any roof garden, cabaret, or other similar entertainment." While the appellee does not operate a roof garden, and since it has no floor show it does not operate a cabaret within the dictionary definition, the performance in the Ionian Room is covered by the phrase "other similar entertainment." The statute clearly provides for a tax upon admissions to places that are not conducted precisely as roof gardens or cabarets. Similarity in every respect is certainly unnecessary. The performance is similar to that of a roof garden or cabaret because of the fact that instrumental and vocal solo performances are given for the entertainment of patrons, and there is provision for dancing. This conclusion is supported by the portion of the applicable Treasury Regulation which is quoted in the majority opinion (Treas.Reg. 43, 1932 ed., Art. 11).

The stipulated facts show, in my opinion, that the performance, in the precise language of Article 11 of the regulation, is a public entertainment or diversion in the way of singing, solo instrumental numbers, and dancing with instrumental music, conducted for the profit of the management by professionals under the auspices of the management and in connection with the service of selling food and other refreshment in the dining room. Since the orchestra music is not unaccompanied by any other form of entertainment, the exception stated in Article 11 does not apply.

Examples 2 and 3 under Article 11, cited in the majority opinion, describe factual instances covering both the admission-charge feature and the nature of entertainment covered by the section to illustrate cases in which a tax is imposed. These examples are included in and made part of the regulations and describe situations substantially identical to that presented here.

Approval of the District Court's conclusion overthrows the consistent and uniform interpretation adopted by those charged with the administration of these tax provisions. The substance of the pertinent provisions of the present regulations was announced December 4, 1917, by Treasury Decision 2603 which was promulgated by the Commissioner of Internal Revenue with the approval of the Secretary, pursuant to the express authority of Section 700 of the Revenue Act of 1917, 40 Stat. 318. Treasury Decision 2603 provided in substance that twenty per cent of the amount paid for refreshment, etc., at any public performance for profit at any cabaret or other similar entertainment to which the charge for admission is wholly or in part included in the amount so paid "shall be regarded and deemed to be paid for admission to such performance," and also provided that "A hotel * * * affording in connection with the service of refreshment, food, or merchandise, entertainment in the form of dancing by its patrons is included."

This administrative construction was cited in the report prepared by the Committee on Ways and Means of the House of Representatives upon the bill which became the Revenue Act of 1918. It was pointed out in this report (H.R. No. 767, 65th Cong., 2d Sess., p. 32) that the Treasury Department had determined that a general rule could be laid down to the effect that twenty per cent of the amount paid for refreshment, service or merchandise represented approximately the amount covered by the total price paid which could be attributable to the admission charge and that the bill embodied this treasury ruling as a basis for determining the tax upon the admission where the admission charge is included in the price paid for refreshment. It is evident that Congress thus had brought to its attention at the same time in the same Treasury Decision the administrative interpretation that "a hotel, restaurant or hall affording, in connection with the service of refreshment, food, or merchandise, entertainment in the form of dancing by its patrons" was included by the phrase "similar entertainment," but no material change was made in the pertinent statutory provi-

sion so construed. The fact that the legislative history of the section supports the administrative interpretation of the statute provides an independent reason for adopting that construction. Estate of Sanford v. Commissioner, 308 U.S. 39, 44, 60 S.Ct. 51, 84 L.Ed. 20; Apex Hosiery Co. v. Leader, 310 U.S. 469, 489, 60 S.Ct. 982, 84 L.Ed. 1311, 128 A.L.R. 1044; United States v. American Trucking Ass'ns, Inc., 310 U.S. 534, 546 et seq., 60 S.Ct. 1059, 84 L.Ed. 1345; United States v. Dickerson, 310 U.S. 554, 562, 60 S.Ct. 1034, 84 L.Ed. 1356; United States v. Cooper Corp., 312 U.S. 600, 611, 613, 61 S.Ct. 742, 85 L.Ed. 1071; United States v. Wrightwood Dairy Co., 315 U.S. 110, 62 S.Ct. 523, 86 L.Ed. 726.

The bill with these provisions was enacted into law and was subsequently reenacted in the Revenue Acts of 1921 and 1924, with no change in the definitive language. Section 500(a) (5) of the 1926 Act retained the identical phraseology. The statute is not so explicit as to leave no room for elucidation. Under such circumstances it is held that "Congress must be taken to have approved the administrative construction and thereby to have given it the force of law." Helvering v. R. J. Reynolds Tobacco Co., 306 U.S. 110, 115, 59 S.Ct. 423, 426, 83 L.Ed. 536; United States v. Dakota-Montana Oil Co., 288 U.S. 459, 53 S.Ct. 435, 77 L.Ed. 893. Cf. Helvering v. Reynolds, 313 U.S. 428, 432, 61 S.Ct. 971, 85 L.Ed. 1438, 134 A.L.R. 1155.

The majority of the court in effect concedes that the interpretation of the statute for which appellee contends is at variance with the interpretation consistently adhered to by those charged with its administration. This interpretation would ordinarily be entitled to great respect. Edwards' Lessee v. Darby, 12 Wheat. 206, 210, 6 L. Ed. 603; Brewster v. Gage, 280 U.S. 327, 336, 50 S.Ct. 115, 74 L.Ed. 457. The variance is justified by the majority upon the ground that the statute is so clear and unambiguous as to leave no room for extrinsic aids to construction.

In the interpretation of statutes the function of the courts is simply to construe the language used so as to give effect to the intention of Congress and there is no more persuasive evidence of the purpose of a statute than the words by which the Legislature undertook to give expression to its wishes. But no matter how clear the meaning of words as used in a statute may appear upon independent examination, there is no rule of law which forbids the use of any aid to a determination of the intended meaning of the Congress that may be available. Boston Sand & Gravel Co. v. United States, 278 U.S. 41, 48, 49 S.Ct. 52, 73 L.Ed. 170; United States v. Dickerson, supra, 310 U.S. page 562, 60 S.Ct. 1034, 84 L.Ed. 1356. Acceptance of a "literal interpretation dogma which withholds from the courts available information for reaching a correct conclusion" increases the danger, ever present, that the courts' conclusion as to legislative purpose will be unconsciously influenced by the judges' own views or by factors not considered by the legislative body. United States v. American Trucking Ass'ns, Inc., supra, 310 U.S. page 542 et seq., 60 S.Ct. page 1064, 84 L.Ed. 1345.

The judgment of the District Court should be reversed.