## MID–CONTINENT PETROLEUM CORP. v. NATIONAL LABOR RELATIONS BOARD.

### No. 11618.

United States Court of Appeals
Sixth Circuit.

May 22, 1953.

J. P. Greve and R. H. Wills, Tulsa, Okl. (R. H. Wills and J. P. Greve, Tulsa, Okl., on the brief), for petitioner.

Fannie M. Boyls, Washington, D. C. (George J. Bott, David P. Findling, A. Norman Somers, Fannie M. Boyls and Thomas F. Maher, Washington, D. C., on the brief), for respondent.

Before SIMONS, Chief Judge, and ALLEN and McALLISTER, Circuit Judges.

McALLISTER, Circuit Judge.

In a consent election pursuant to the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., the truck drivers operating from petitioner's Terre Haute bulk plant, having been found to constitute an appropriate bargaining unit, selected the Teamsters Union, AFL, as their exclusive representative for collective bargaining in respect to rates of pay, wages, hours of work, and other conditions of employment. Six employees composed the unit involved. Four voted for the union representation, and two, against it. After the union's certification on March 12, 1951, as bargaining representative for the employees in the unit, petitioner entered into collective bargaining negotiations with the union. Thereafter, without any unfair labor practice by petitioner, one of the six truck drivers included in the bargaining unit quit his job for personal reasons, and on April 16, 1951, another employee was hired in his stead. Thereafter, within the next

ten days, the new employee and two others in the bargaining unit, without the intervention of any unfair labor practices by the employer company, delivered to it separate letters stating, in substance, that they did not want the union or any other labor organization as their bargaining representative. Subsequently, on or about May 14, 1951, petitioner withdrew recognition from the union on the ground that it no longer represented a majority of the six employees in the unit, and since that time, has refused to recognize or bargain collectively with the union as the exclusive representative of such employees. Upon complaint being filed that petitioner was engaging in unfair labor practices in refusing to recognize and bargain with the union as the exclusive representative of the employees in question, the National Labor Relations Board found that petitioner was thereby guilty of an unfair labor practice, and entered an order directing it to cease and desist from refusing to bargain collectively and from interfering with the efforts of the union to represent the employees and to take appropriate affirmative action of collective bargaining, and to post the customary notices at its place of business. The petitioner thereupon, in accordance with Section 10(f) of the National Labor Relations Act, as amended, Title 29 U.S.C.A. § 160(f), filed a petition for review of the Board's order and asked that it be vacated and set aside.

On the issue whether an employer is required to bargain with a union agent selected by the employees as their representative, where the union thereafter loses its majority status and the employees subsequently discontinue their support of, or repudiate, the union, the various courts of appeals are in conflict. There is no doubt, of course, that where the employer's obstructive tactics, delays, and other unfair labor practices may have contributed to a loss of majority status, the employer is guilty of an unfair labor practice in not recognizing the bargaining agents selected before such unfair labor practices took place. Franks Brothers Co. v. National Labor Relations Board, 321 U.S. 702, 64 S.Ct. 817, 88 L.Ed. 1020.

In this circuit, it has been held that where the bargaining agent chosen by the employees or designated by the Board has lost its majority status without fault on the part of the employer, the latter is not obliged to bargain with such agent after it has been repudiated by the employees. In National Labor Relations Board v. Vulcan Forging Co., 6 Cir., 188 F.2d 927, where, within a week or ten days after a union bargaining agent had been chosen by employees in an election held under the supervision of the National Labor Relations Board, it appeared that nineteen out of twenty of the employees of the plant had notified the company that they severed relations with the union, and that the company was guilty of no unfair labor practices with respect to such severance of relations, we held that the company was relieved of any duty to bargain with the union and that refusal thereafter to bargain with such agent was not a violation of the Act. In its decision, the court said:

> "We can not see how it can reasonably be said in this case that the employees are bound to be represented by the discredited union. The revocations were valid, and, hence, the Board did not sustain its burden of proving that respondent had refused to bargain with the union that represented the majority of the employees. * * * They are entitled by law to bargain collectively through a representative of their own choosing. To force them to bargain through a representative which they had repudiated would be depriving them of their right to bargain through the representative of their choice." 188 F.2d at pages 930, 931.

In National Labor Relations Board v. Standard Steel Spring Co., 180 F.2d 942, 946, this court also had occasion to pass upon the question of the recognition by an employer of a union as bargaining representative, where another union, which had previously been selected by the employees, had thereafter lost its majority status. In that case, it appeared that the majority of the employees of a bargaining unit had designated a certain union as their representative

during a changeover of an industrial plant to new owners, and while a general building reconstruction program was under way. Upon demand by the union representative to be recognized as the collective bargaining agent, the company informed him that it favored a plantwide bargaining unit, and that it had, at the time, only a few permanent employees compared to the number that it would later employ when the plant went into production. Thereupon, the union filed a representation petition with the National Labor Relations Board requesting certification as exclusive bargaining representative. However, during the pendency of the proceeding and while the Board had under advisement the question of the appropriate unit and the determination of bargaining representative, the employees who had formerly voted for the union, by a large majority, and without interference from the employer, chose a new bargaining agent and informed the employer of that fact. In holding that the company was not guilty of any unfair labor practice in recognizing the new bargaining agent, this court said: "There can be no question, from the record, that at the time respondent company recognized [the new bargaining agent], that union represented the great majority of all of respondent's employees, as well as all of the powerhouse employees. In fact, there was no evidence whatever to the contrary. The mere circumstance that there is pending an undisposed proceeding before the Board for the determination of the employees' choice of representative, based on a petition brought by one union, does not convict an employer of unfair labor practices for recognizing another union as the employees' representative on clear proof of such majority representation, submitted several months after the inception of the representation proceedings. * * * Here, the good faith of respondent company was unquestioned by the Board. It is clear that respondent was not guilty of any unfair labor practices."

Another case somewhat along the same line is National Labor Relations Board v. Hollywood-Maxwell Co., 9 Cir., 126 F.2d 815, where a representative of a union which was the bargaining agent of employ-ees of a company was found to have been repeatedly bribed by the employer shortly after such representative had conducted and won a strike, and procured for the union the exclusive bargaining agency of such employees. When the bribery was discovered, a majority of the employees revoked the designation of the union as their bargaining agent and set up a new organization which was recognized as bargaining agent by the company. Because the union had been designated as bargaining agent, the National Labor Relations Board filed a petition to have the employer decreed guilty of an unfair labor practice in refusing to bargain with the union, and to disestablish the new employees' group as bargaining agent. The court held that the employer was not guilty of a violation of the Act in refusing to recognize the union as bargaining agent, and, in arriving at its decision, observed that Congress made it clear by the Act that the employees' right to form their unions was equal to the right to join national unions; that they also had a right, under Section 9 (a) of the National Labor Relations Act, to designate a union which they formed themselves, or a national union, as it best suited them; and that this right included the right to revoke a designation of a union as their bargaining agent. The court held that the designations of the union which had been previously given by the employees were properly revoked by them; that the union was not then or thereafter designated by a majority of the employees as their bargaining agent; and that the company did not violate any provision of the Labor Act in refusing to bargain with it.

In National Labor Relations Board v. Inter-City Advertising Co., Inc., 4 Cir., 154 F.2d 244, 247, the court held that the right of employees to organize and bargain collectively depends upon self-organization; that when a union majority had been dissipated without fault on the part of the employer, the union no longer possessed the authority to speak for the employees; and that an order of the National Labor Relations Board that required the employer to bargain with the union could not be enforced. In its decision, the court said:

"It is apparent from this review of the facts that none of the circumstances existed which in other cases have led the courts to compel an employer to bargain with a union alleged to have lost its majority. There was no aggressive campaign against the Union and no intimidation of the workers as existed in Franks Bros. Co. v. Labor Board, 321 U.S. 702, 64 S.Ct. 817, 88 L.Ed. 1020; National Labor Relations Board v. Bradford Dyeing Ass'n, 310 U.S. 318, 60 S.Ct. 918, 84 L.Ed. 1226; and National Labor Relations Board v. P. Lorillard Co., 314 U.S. 512, 62 S.Ct. 397, 86 L.Ed. 380. There was no room for the presumption that the union majority which once existed continued in being or that the decline in union membership was due to the employer's refusal to bargain as was the case in Great Southern Trucking Co. v. National Labor Relations Board, 4 Cir., 139 F.2d 984 and National Labor Relations Board v. Highland Park Mfg. Co., 4 Cir., 110 F.2d 632; or that the loss of majority was due to unfair labor practices as was the case in National Labor Relations Board v. Cowell Portland Cement Co., 9 Cir., 148 F.2d 237, 242; National Labor Relations Board v. George P. Pilling & Son Co., 3 Cir., 119 F.2d 32; and National Labor Relations Board v. Chicago Apparatus Co., 7 Cir., 116 F.2d 753; and there was no ground for applying the rule that a certification of bargaining representatives must be maintained for a reasonable time on the ground that it would be impracticable to hold frequent elections upon every shift of sentiment of the employees as in National Labor Relations Board v. Appalachian Electric Power Co., 4 Cir., 140 F.2d 217 and National Labor Relations Board v. Century Oxford Mfg. Corp., 2 Cir., 140 F.2d 541."

In National Labor Relations Board v. Mayer, 5 Cir., 196 F.2d 286, 289, where a union was designated by a majority of the employees as their collective bargaining agent, and bargaining was thereafter carried on, and later there was a written request to the employer by a majority of employees to discontinue the union as their bargaining representative, the court held that since the employer had nothing to do with the action of the employees, it was guilty of no unfair labor practice in refusing to bargain with the union after it had been repudiated by a majority of the employees. The court said: "If we should compel respondent to bargain further with this Union, which the employees themselves have obviously repudiated, the result would be to deny them the right, secured by the Act, to bargain through the representative of their choice. The choice has here been made by the employees in a manner that does not admit of dispute. * * * we see no reason why the employer can not * * * accede to the wishes * * * of his * * * employees, and discontinue dealing with it."

In National Labor Relations Board v. Bradley Washfountain Co., 7 Cir., 192 F.2d 144, where a company refused to recognize a union with whom it had been carrying on negotiations in the past as the collective bargaining agent of its employees, and a petition had been filed by the majority of the employees with the Board seeking the decertification of the union as such agent, it was held that the company was guilty of no unfair labor practice in refusing to bargain with the union after it had learned that a majority of its members had voluntarily disclaimed a desire to be connected with it any longer, and that it would rob the National Labor Relations Act of all realities and practicalities to continue to recognize such union as the bargaining agent.

Contrasted with the views as heretofore expressed in opinions from this circuit, and the adjudications above mentioned and discussed, are those of other courts taking a contrary view.

Thus, in National Labor Relations Board v. Botany Worsted Mills, 3 Cir., 133 F.2d 876, where the company contended that the rights of employees under the Act entitled them to choose their bargaining agent, but, like any other agent, the authority may be terminated at the wish of the principal, the court held that such authority could not be terminated except through the Board. Commenting upon the contention of the respondent that there can be no length of time in which an employee is bound by the choice expressed in an election, and that whenever

they change their minds, it is the duty of the Board to give effect to the new choice, the court said:

> "The argument, while containing some elements of plausibility, would, if accepted, make chaos out of the administration of the statute and prevent the protection of the very rights which it aimed to secure. Litigants in all law suits are entitled to their rights under the law, but they must work them out in orderly fashion according to rule. The Board was empowered by the statute to make rules and regulations for its procedure for the same reason. The Board has within its authority power to ascertain the will of the majority of a given group of employees by election or other means. The election method is chosen, we take it, because secret ballot is regarded as the most effective way of getting an untrammeled expression of the desire of the electorate. Surely it is not to be defeated of all its effectiveness by a communication, undisclosed to the Board, repudiating, immediately after the election was held, the ballot count. The employees in this case, if they wished to change their minds concerning a bargaining agent, could have asked the Board for another election. If the Board had arbitrarily refused it within a reasonable time then we might have a case where a question could be raised whether it had done its duty under the statute. But those are not the facts of this case." 133 F.2d 876, 881.

However, in National Labor Relations Board v. Globe Automatic Sprinkler Co., 3 Cir., 199 F.2d 64, 70, the court, while apparently professing to adhere to the rule laid down in the foregoing case, held that where an employer who had bargained in undisputed good faith with a certified union for a period of eleven months and one week, and who only terminated the bargaining process upon the written request of its employees coincident with their unanimous action in filing a decertification petition which was not prompted or influenced by the employer, such employer was not bound to bargain with the certified union, or to resort to the Board for guidance. The court observed that the record disclosed that the dissatisfaction of the employees with the certified union was attributable to several facts—the union took the position that its business representative was authorized to enter into a collective bargaining agreement on behalf of its members without their ratification or their approval; the proposals and counter-proposals in the course of the almost year-long bargaining were never submitted to the employees; the latter were not kept advised of the course of negotiations and no formal meetings of the union were held. The court further stated that in its opinion it would be inconsistent with the principles of equity, if, under the circumstances stated, it should grant the Board's petition for enforcement, and that such action would be violative of the spirit and letter of the Act, which, in its declaration of policy, asserts that the purpose of the Act is to protect "the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection." The court went on to say that if it granted the Board's petition, it would have a situation where the employees would be bound to work under terms and conditions fixed for them by representatives not of their own choosing. Such a situation, it was remarked, would be intolerable to the employees, and certainly not conducive to the industrial repose sought by the Act. "It would be", said the court, "in express violation of their lawful right under the Act to bargain collectively through a representative of their own choosing and to enjoy 'full freedom of association, self-organization, and designation of representatives'."

In National Labor Relations Board v. Century Oxford Mfg. Corp., 2 Cir., 140 F.2d 541, 542, it was held that the employees' power to recall an elected bargaining representative was a matter primarily for the National Labor Relations Board, and that, in electing a union as such repre-

sentative, the employees committed themselves to it as their representative for a longer period than six weeks, unless the Board, in its discretion, sees fit to intervene because of extraordinary circumstances. The court said: "Inherent in any successful administration of such a system is some measure of permanence in the results: freedom to choose a representative does not imply freedom to turn him out of office with the next breath. As in the case of choosing a political representative, the justification for the franchise is some degree of sobriety and responsibility in its exercise. Unless the Board has power to hold the employees to their choice for a season, it must keep ordering new elections at the whim of any volatile caprice; for an election, conducted under proper safeguards, provides the most reliable means of ascertaining the deliberate will of the employees. How long the employees' undoubted power to recall an elected representative may be suspended, is a matter primarily, perhaps finally, for the Board; but a period of six weeks is on any theory not the limit. When they elected the union, the employees committed themselves to it as their representative for a longer period, unless the Board in its discretion saw fit to intervene because an extraordinary situation presented itself which demanded extraordinary measures."

To the same effect, in National Labor Relations Board v. Geraldine Novelty Co., 2 Cir., 173 F.2d 14, it was held that the administrative doctrine of the National Labor Relations Board that, once a bargaining representative had been certified or recognized by a contract, there must be some measure of permanence to the relationship, and that such period of stability usually extends for about a year in the case of a certified union without a contract, or until the end of the contract term, if a union contract exists, is reasonable.

In National Labor Relations Board v. Appalachian Electric Power Co., 4 Cir., 140 F.2d 217, 224, the court, following the rule announced in the Third Circuit in National Labor Relations Board v. Botany Worsted Mills Co., supra, held

that where a bargaining agent was selected by employees in an election supervised by the Board, they could not repudiate it within ten weeks thereafter, as such conduct would preclude the adequate protection of the very rights which the Act was designed to secure. However, in that case, a vigorous dissent was filed by Judge Soper. He observed that while many decisions held that, where an employer influenced his employees by unfair labor practices to withdraw support from their chosen representative, he must continue to bargain with them through their representative until, in the determination of the Board, the effect of his illegal acts had been dissipated, nevertheless, such cases have no relevance where the employer is exonerated from all fault. Judge Soper continued: "Even in cases in which the union's loss of a majority is traceable to wrongful conduct on the part of the employer or the employees, it has been decided that the Board's order to recognize the union cannot be enforced when it fails to face the realities of the situation. Such an order was reversed in National Labor Relations Board v. Fansteel Corp., 306 U.S. 240, 59 S.Ct. 490, 83 L.Ed. 627, 123 A.L.R. 599, where the employer indulged in certain anti-union statements and actions and subsequently the union lost its majority through the justifiable discharge of employees who had participated in a sit-down strike; and such an order failed of enforcement in National Labor Relations Board v. Hollywood-Maxwell Co., 9 Cir., 126 F.2d 815, where the men revoked their choice of the union when it was discovered that the union leader had been bribed by the president of the company. If in such cases the Board's certificate may be set aside by the courts, on what ground can we refuse to uphold the employees' right to choose their bargaining agent when no fault can be attributed either to them or to their employer?

"Only one answer to this question has been or can be made; and that upon reflection is seen to be totally inadequate in the present situation. It is said that the Board's certificate must be given vitality for at least a reason-

able time and may not be set aside at every transient whim or change of mind on the part of the employees, for otherwise orderly administration of the statute would be impossible. This is of course true; but it is still necessary in every set of circumstances to decide what is a reasonable time. The Board reached its conclusion, that a reasonable time had not elapsed, by finding that the employer had been guilty of wrongful conduct whose evil influence still persisted; but this finding has now gone out of the case through the opinion of the court, and nothing is left to support the Board's order but an empty and lifeless phrase. To give it effect in this case will uphold the Board's power, but it will deny rights to working men which the Board was created to protect."

In Poole Foundry & Machine Co. **v.** National Labor Relations Board, 4 Cir., 192 F.2d 740, the court held that, where an employer had entered into a settlement agreement with the union, thereby securing a withdrawal of charges by the union of unfair labor practices, it was bound to bargain in good faith with the union for a reasonable period of time after such agreement without questioning the union's lack of authority, and that the Board did not act arbitrarily in finding that a period of three and a half months which elapsed between the time of the execution of the settlement agreement and refusal of the employer to bargain was not such a reasonable period, and that the employer was, therefore, precluded from questioning the representative status of the union, although a majority of the employees had filed a decertification petition. To the foregoing opinion, Judge Wyche entered a strong dissent, observing, first, that the company had not committed any unfair labor practices which led to the agreement of settlement and the dissatisfaction of the employees with the union did not spring from any improper conduct on the part of the employer. In the course of his opinion, Judge Wyche said that the outstanding fact in the case, which was difficult to explain on any reasonable basis, was that

an employer of labor, innocent of any wrongdoing, was being compelled to bargain with the union which had been formally repudiated by 97% of the employees, and that the difficulty was heightened by the lack of any statute, administrative regulation, or precedent to justify the Board's action.

From the foregoing adjudications, there manifestly appears considerable conflict in the circuits, on the issue here before us.

As has been observed, the Supreme Court held, in the case of Franks Bros. Co. v. National Labor Relations Board, 321 U.S. 702, 64 S.Ct. 817, 88 L.Ed. 1020, that where a union agent selected by a majority of the employees thereafter loses such majority status through unfair labor practices of the employer, the employer is guilty of an unfair labor practice in not recognizing the bargaining agent selected by the employees before such unfair labor practice took place. In reaching its decision, the court said that otherwise the Board might well think that, were it not for such a remedy in requiring the employer to bargain with an agent which had lost its majority status, recalcitrant employers might be able, by continued opposition to union membership, to postpone indefinitely performance of their statutory obligation to bargain collectively. However, the Supreme Court has not passed upon the question whether, absent such unfair labor practices on the part of the employer, the latter is obliged to bargain for a reasonable time or any time, with an agent theretofore selected by the employees which they have subsequently repudiated.

In Medo Photo Supply Corp. v. National Labor Relations Board, 321 U.S. 678, 64 S.Ct. 830, 833, 88 L.Ed. 1007, the court held that bargaining carried on by an employer directly with the employees, whether a minority or a majority, who have not revoked their designation of a bargaining agent, would be subversive of the mode of collective bargaining which the statute ordained and would be an unfair labor practice. Chief Justice Stone, speaking for the court in the determination of the case, said:

"The statute guarantees to all employees the right to bargain collectively through their chosen representatives. Bargaining carried on by the employer directly with the employees, whether a minority or majority, who have not revoked their designation of a bargaining agent, would be subversive of the mode of collective bargaining which the statute has ordained, as the Board, the expert body in this field, has found. Such conduct is therefore an interference with the rights guaranteed by § 7 and a violation of § 8(1) of the Act. There is no necessity for us to determine the extent to which or the periods for which the employees, having designated a bargaining representative, may be foreclosed from revoking their designation, if at all, or the formalities, if any, necessary for such a revocation. Compare Labor Board v. Century Oxford Mfg. Co., 140 F.2d 541, C.C.A.2d, decided February 15, 1944. But orderly collective bargaining requires that the employer be not permitted to go behind the designated representatives, in order to bargain with the employees themselves, *prior to such a revocation*. And it is the fact here, as found by the Board, that the employees did not revoke their designation of the union as their bargaining agent at any time while they were themselves negotiating with petitioner, and that they left the union, as they had promised petitioner to do, only when petitioner had agreed to give them increased wages." (Emphasis supplied.)

Although the court expressly chose not to discuss the proposition here in issue, there certainly is nothing implicit in the foregoing language of the opinion that would indicate any tendency to hold that employees could not revoke the powers of their bargaining agent.

Mr. Justice Rutledge, however, dissented from the opinion of the court on the ground that it was not necessary that employees revoke their designation of the bargaining agent in order to entitle an employer to deal with the employees, but that where it was clear that the employer did nothing more than accede to the wishes of a clear majority of the employees, no communication of revocation of the bargaining agent to the union was necessary. In view of the fact that the dissent was placed upon the ground that formal revocation of the powers of a bargaining agent was not necessary in order to enable the employees to deal directly with the employer, and because the prevailing opinion of the court held that such a formal revocation was necessary—without, however, denying that the employees had the power to revoke the powers of such an agent—the views expressed by Mr. Justice Rutledge, which are applicable to the instant case and which have not been countered, seem to us illuminating, persuasive, and worthy of restatement. In his opinion, Mr. Justice Rutledge said:

"The Board's theory was, apparently, that the men, to revoke their designation, were required to communicate the revocation to the union and that the union had acquired such an interest or status no other act could terminate the agency, however inconsistent with its continued existence and exclusive character.

"The statute makes no provision that the agency, once created, shall continue for any specific time. * * * The statute purports to be drawn in favor of protecting the interests of employees, not those of unions as such. True, while the agency exists it is exclusive for its appropriate purposes. But it is so only while it does exist * * *."

In discussing the relationship between a bargaining agent and the employees, and the extent and limits of the authority of such an agent, as well as the right of the employees to terminate it, Mr. Justice Rutledge said:

"The Board implies and the Court says the employer should have declined to discuss with [the employees] any matter which was appropriate for collective bargaining, since the union was their agent for this purpose. Therefore, it is concluded, the employer violated their rights under the statute

to bargain collectively. This, although it is conceded the twelve employees spoke for 18 of the 25 or 26 in the unit and it does not appear that what they did was disapproved or repudiated by the other six or seven. Merely to state this proposition should be enough to negate it. For it preserves rights of employees to bargain by representatives of their own choosing by destroying them. In all normal agency relations, except those 'coupled with an interest,' the principal can revoke them by exercising the agency himself. * * *

"Unless a designated union acquires, by its selection, a thraldom over the men who designate it analogous to the power acquired by one who has a 'power coupled with an interest,' unbreakable and irrevocable by him who gave it, it would seem that any powers the union may acquire by virtue of the designation would end whenever those who confer them and on whose behalf they are to be exercised take them back of their own accord into their own hands and exercise them for themselves. * * *

"I do not think Congress intended, by this legislation, to create rights in unions overriding those of the employees they represent. * * * What Congress did was to give the designated union the exclusive right to bargain collectively as long as, and only as long as, a majority of the employees of the unit consent to its doing so. When that majority vanishes by the employees' voluntary action, whatever form this may take, and the fact is made unmistakably clear to the employer, it not only is no longer under duty to deal with the union; it comes under affirmative obligation not to do so. For otherwise it would be dealing with a representative not of the employees' choice."

In the opinion of Mr. Justice Rutledge were also outlined certain limitations on the action of employees in terminating the authority of the bargaining agent which are applicable where an employer indulges in unfair labor practices, as well as in those circumstances where it is difficult to ascertain the will of the employees:

"There are two possibly applicable limitations. One is that the employer must not interfere to bring about the abandonment. The other is that, in large units, where there are difficult problems of ascertaining whether a majority exists at a particular time, a reasonable degree of stability in employment relations may require, to give the statute workable operation, that a majority designation be deemed to continue for a reasonable period, though changes meanwhile may take away the clearly exisiting majority, a question not yet finally determined.

"The latter limitation, if it is one, can have no reasonable application to a small unit and a small employer under circumstances like those involved here. In such a situation to impose it, where the actual desires of the majority may be easily and readily ascertained at any time, would be to force men into unions and into dealing with their employers through unions contrary to the employees' own wishes. The statute has no such purpose."

The foregoing expresses our views in the case before us. We find no justification in administrative rulings that, upon the election or designation of a bargaining agent by a majority of the employees, they thereby commit themselves irrevocably to such agent for a period of a year. There is nothing in the statute that implies an election or designation for such a term. There are no regulations requiring that employees be bound to an election or selection of a bargaining agent for a period of one year. This is not to suggest the validity of such regulations, if promulgated; but their absence leaves decisions of the Board on this question dependent on the exercise of its judicial or quasi-judicial powers rather than upon powers to make regulations, legislative in nature, to carry the Act into effect. Administrative construction of a statute is

given weight when a statute is ambiguous. Busey v. Deshler Hotel Co., 6 Cir., 130 F.2d 187, 142 A.L.R. 563. But such a construction will not be permitted to override the plain language of the law. Haggar Co. v. Helvering, 308 U.S. 389, 60 S.Ct. 337, 84 L.Ed. 340. The construction of a statute is a matter which, ultimately, is solely for the courts; Fleming v. Mohawk Wrecking & Lumber Co., 331 U.S. 111, 67 S.Ct. 1129, 91 L.Ed. 1375; Sullivan v. Kidd, 254 U.S. 433, 41 S.Ct. 158, 65 L.Ed. 344; and courts must interpret a statute regardless of previous administrative practice; Social Security Board v. Nierotko, 327 U.S. 358, 66 S.Ct. 637, 90 L.Ed. 718. We find no ambiguity in the statute, and, accordingly, no need to supplement its provisions by adding thereto a requirement that employees are bound to their bargaining agent for the period of a year after election or designation.

We do not find, as has been suggested, that the justification for the franchise of electing a bargaining agent is sobriety and responsibility in its exercise. Such qualities are commendable, as they are commendable in exercising the franchise of electing political representatives, but are not the basis and justification for such right. Plainly, the justification for the franchise under the Act is the statutory right of employees to bargain collectively through representatives of their own choosing, if they so desire. As far as a term of office goes, there is no similarity between choosing a bargaining agent under the Act and electing a political representative, the period of whose office is specifically provided by statute. Nor do we find ourselves in agreement with the proposition that the application of the ordinary rules of agency would make chaos out of the administration of the statute and prevent the protection of the rights it was aimed to secure. If employees desire to dismiss their bargaining agent and bargain directly with their employer, they may be wise or they may be foolish. But, as Mr. Justice Rutledge observed in Medo Photo Supply Corp. v. National Labor Relations Board, 321 U.S. 678, 698, 64 S.Ct. 830, 840, 88 L.Ed. 1007, "It is not impossible for men to want wage increases and also to remain or become nonunion men at the same time." Elections or designations of bargaining agents and their subsequent repudiation may not make for an orderly fashion of procedure in the world of administrative agencies. But the statute, in its provisions that employees shall have the right to be represented by agents of their own choosing, provides a democratic process, and the fact that the exercise of such freedom of choice, like the exercise of democratic processes in other ways, may not fit in neatly with the scheme of administrative procedure is no reason, in law, for suspending, through administrative fiat, the exercise of such choice for a period of a year, in order that the problems of employees can be worked out by the Board in what it deems an orderly fashion, whether they like it or not.

It is said that one of the purposes of the Act is to stabilize labor relations, and that repudiation by employees of their bargaining agent within the period of one year after election or designation would defeat the effectiveness of the Act. Where the employees have lost faith in a bargaining agent, have repudiated it, and revoked its powers to act on their behalf, it would seem to be the antithesis of the stabilization of labor relations to compel them to continue such agent as their representative and to force the employer to bargain with it contrary to the clearly expressed wishes of the employees; and, from the standpoint of employees, it might appear patronizing to deprive them of the right to revoke the authority of their bargaining agent on the ground, which has been suggested, that the Board must have the power to hold them to their choice for a year in order to avoid their whims and volatile caprice in selecting a different bargaining agent.

It is submitted by the Board that the language of the present Act, as well as its legislative history, shows that Congress, in its amendments, recognized and attempted to give effect to the principle declared by the Board that a bargaining agent, once chosen, remains the agent for a period of one year. This argument is based

on the amendment providing that not more than one election to select such an agent will be held within a year. Title 29 U.S.C.A. § 159(c)(3). Senator Taft's statement is cited to the effect that the amendment provided that elections were to be held only once a year so that there would not be "a constant stirring up of excitement by continual elections. The men choose a bargaining agent for one year. He remains the bargaining agent until the end of that year." 93 Cong.Rec., page 3838. Moreover, the language of the Senate Report[1] is referred to where it is stated that the amendment prevents the Board from holding elections more often than once a year in any given bargaining unit unless the results of the first election are inconclusive "by reason of none of the *competing unions* having received a majority. At present, if the union loses, it may on presentation of additional membership cards secure *another election* within a short time, but if it wins its majority cannot be challenged for a year." (Emphasis supplied.) The Senate Report further stated that "In order to impress upon employees the solemnity of their choice, *when the Government goes to the expense of conducting a secret ballot,* * * * *elections* in any given unit may not be held more frequently than once a year."[2] It seems clear that what Congress was directing its attention to was the struggle between competing unions, the ensuing rupture of peaceful relations between employees and employers, and the attempt to avoid the work, trouble, and expense of holding more than one election a year under the supervision of the Board; and the language and discussion above referred to bear out the fact that it was Board elections with which Congress was concerned. The provision in the amendment to prohibit holding more than one election each year under the

supervision of the Board does not in any way imply that employees may not repudiate a bargaining agent within such a yearly period. Such bargaining agent is provided for the benefit of the employees and not for the convenience of the Board, and whether such agent be designated or repudiated is the concern of the employees. Moreover, it is not every expression of views in discussion on the floor of Congress, and every statement in a committee report, that control the construction of a statute. These are only aids in construction, and if the language of the statute is plain and not ambiguous, resort to such considerations is improvident and unnecessary. The intent of Congress is to be carried out and it would have been a simple thing for Congress to provide that employees who elected or designated a bargaining agent were bound to bargain through such agent for a period of one year. The subject was not complicated and presented no difficulties of expression or phrasing. Congress did not so provide.

It is our conclusion that whenever the will of the employees to revoke the power of their bargaining agent is clear and unquestioned, effect must be given to such revocation, and the employees, in such a case, are thenceforth free to bargain collectively through an agent of their choice, if they so desire.

The small unit of six truck drivers in this case had the right to revoke the powers of the bargaining agent theretofore elected by them. The employer having been guilty of no unfair labor practice in bringing about such revocation, is not guilty of an unfair labor practice for having failed to bargain with the agent in question after its powers had been revoked.

In accordance with the foregoing, a decree will be entered setting aside the order of the Board.

---

1. Sen.Rep.No. 105, 80th Cong., 1st Sess., page 25.

2. Sen.Rep.No. 105, 80th Cong., 1st Sess., page 12.